**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**MARGARET ELAINE RAND**

**Plaintiff,**

**v.**

**HENRY K. PAULSON,**
**Secretary of the Treasury,**

**Defendant.**

**Civil Action No.: 08-703 (PLF)**

**DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OF THE COMPLAINT, OR ALTERNATIVELY FOR PARTIAL SUMMARY JUDGMENT**

Defendant, Henry K. Paulson, Secretary of the Treasury, hereby files his motion for partial dismissal of plaintiff's complaint. Plaintiff's claim alleging a violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), should be dismissed because she has failed to properly exhaust her administrative remedies as it concerns this claim and, furthermore, the claim fails to set forth a claim for relief under the law. Alternatively, defendant seeks partial summary judgment because there are no material issues of fact in dispute and defendant is entitled to judgment as a matter of law.

In support of this motion, defendant respectfully submits the attached statement of facts not in genuine dispute, a memorandum of points and authorities with exhibits, and a proposed order.

Respectfully submitted,

/s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

**COUNSEL FOR DEFENDANT**

Of Counsel:

A. Wade Norman
Office of the General Counsel
United States Department of Treasury
1500 Pennsylvania Avenue, NW
Washington, DC 20220

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MARGARET ELAINE RAND**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HENRY K. PAULSON,**<br>**Secretary of the Treasury,**<br><br>**Defendant.** | **Civil Action No.: 08-703 (PLF)** |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR PARTIAL DISMISSAL OF THE COMPLAINT OR, ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT**

Defendant, Henry K. Paulson, Secretary of the Treasury, hereby files his memorandum of law in support of his motion to dismiss part of the complaint. Dismissal of plaintiff's Rehabilitation Act claim is warranted because she has failed to exhaust her administrative remedies as it pertains to this claim and, in addition, she has failed to state a claim for relief. Alternatively, judgment as a matter of law should be entered in defendant's favor on this claim.

**FACTUAL BACKGROUND**

This lawsuit involves an employee who contends that working with her supervisor has made her disabled within the meaning of the Rehabilitation Act and who sought an accommodation removing her from her supervisor's supervision. Plaintiff, Margaret Elaine Rand, is a former employee of the Secretary of the Treasury ("defendant" or "the agency"). Plaintiff has filed a complaint alleging discrimination based on her alleged disability as well as alleged reprisal. This motion addresses plaintiff's claim under the Rehabilitation Act based upon

her alleged disability.

On June 28, 2006, plaintiff filed a request for an accommodation. In this request, plaintiff contended that due to the "anxiety caused by supervisor who discriminates against me by watching every single minute of my day, and accusing me of not being at my desk when I am, I can no longer perform the duties of a regular, capable employee." Exhibit ("Ex.") A, Request for Reasonable Accommodation, at 2. Plaintiff contended that in order to "function at all" she was required to "take tranquilizers before coming to work, a mild sleeping pill to get through the night with adequate sleep, and a stress reducer." Id. Plaintiff contended that this medicine was causing her "to lose energy, have headaches, and perform poorly outside of work. Also, I am told that every product I turn in is a failure. . . ." Id. As an accommodation, plaintiff sought to be immediately detailed to another position in Domestic Finance, in the Office of Financial Education. Id. at 2-3. She indicated that she "believe[d] that this other environment would allow me to reconnect with the superior level of work I have always performed, but cannot do now." Id.

In a decision dated August 1, 2006, plaintiff's supervisor, James Sullivan, denied her request for an accommodation. Ex. B, Decision on request for reasonable accommodation. In denying plaintiff's request, Mr. Sullivan indicated that plaintiff had failed to establish that plaintiff had a disability affecting a major life activity. Id. The letter informed plaintiff that she could seek reconsideration of Mr. Sullivan's decision by writing to him. Id. Mr. Sullivan's letter informed plaintiff that she also had the right to file an EEO Complaint, pursue an appeal to the Merit Systems Protection Board, or file an administrative grievance. Id. at 1-2. Significantly, the letter informed plaintiff that in order to file an EEO complaint, plaintiff had to contact the "DO

EEO Officer to be assigned an EEO Counselor within 45 days from the date of this notice of denial of reasonable accommodation." Id.

After July 3, 2006, plaintiff stopped coming to work and never returned to duty. Ex. D, Merit Systems Protection Board ("MSPB") Initial Decision, at 3.[1] Plaintiff provided notes to the agency from medical providers advising that she should not return to work in her current position because of the stress allegedly caused by Mr. Sullivan's alleged mistreatment of her. Id. After July 3, 2006 through the end of the year, the agency allowed plaintiff to use available leave, including the twelve weeks of leave available to her under the Family and Medical Leave Act ("FMLA"). Id. at 4-5. The agency directed plaintiff to return to work upon exhaustion of her FMLA leave on January 2, 2007, warning her that if she failed to return to work or justify her continued absence, she would be considered absent without leave ("AWOL"). Id. at 5. In lieu of returning to work, plaintiff submitted further medical documentation stating that she could only return to work if the agency agreed to transfer her to another position where she would not be supervised by Mr. Sullivan. Id. On January 25, 2007, nearly seven months after plaintiff last appeared for work, Mr. Sullivan proposed plaintiff's removal from her position. Id. at 2.

After receiving Mr. Sullivan's proposal to remove her, on February 12, 2007, plaintiff sought reconsideration of her request for a reasonable accommodation. Ex. C, Reconsideration for Reasonable Accommodation.[2] Plaintiff stated that since July 3, 2006, the date she suffered a

---

[1]The pages of the initial decision are not numbered; therefore defendant refers to the pages in the chronological order in which they appear.

[2]Prior to her supervisor's denial of her request for an accommodation, plaintiff emailed Gloria Booze, an EEO counselor, regarding alleged deficiencies with the agency's reasonable accommodation process. Ex. E, Memorandum from Gloria Booze dated August 10, 2006. Ms. Booze addressed plaintiff's concerns and again reminded plaintiff of her obligation to contact an

panic attack due to alleged harassment in the work place, she had been diagnosed with Adjustment Disorder and Mixed Anxiety and depressed mood. Id.[3] Plaintiff contended that this illness, which "would be aggravated seriously by a return to my current work situation[,]" has affected her ability to carry out normal daily activities, "including reading the newspaper or doing the laundry regularly[ ], my sleep, my concentration, and caring for myself." Id. As an accommodation, plaintiff sought "a reassignment to another office or other job situation for which I am suited." Id. at 4. Plaintiff contended that this "requested accommodation would allow me to work without the duress of not knowing when the next accusation or berating of my work would occur." Id.

**STANDARD OF REVIEW**

Defendant seeks dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted) (emphasis added). Thus, in order for a complaint to survive dismissal, the "[f]actual allegations must be enough to raise a right to relief above the

---

EEO counselor within 45 days of the denial of her request for an accommodation in order to file an EEO complaint. Id. at 2.

[3]In addition to her alleged mental health condition, plaintiff also claimed in her request for reconsideration that she suffered from "bad knees" and sought to be moved to an office space on the first or second floors that would allow her easier egress in the event of an emergency. Ex. C, at 2. However, plaintiff does not address this second component of her request for reconsideration in her complaint, raising only the agency's decision concerning her request for reassignment.

speculative level . . . ." Id. (citations omitted). This requires a plaintiff seeking to avoid dismissal to state "circumstances, occurrences and events" that support the legal claim presented rather than merely make a "bare averment" that he is entitled to relief. Id. at 1965 n.3. Dismissal is required if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.[4]

Should the Court treat this motion as one seeking summary judgment pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In determining whether a genuine issue of material fact exists, the trier of fact must view all the facts, and the reasonable inferences to be drawn from them, in a light most favorable to the non-moving party. Anderson, 477 U.S. at 255. If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50. In order to withstand summary judgment, the non-moving party is not at liberty to rest

[4]The fact that defendant has attached documents to his motion does not require that the Court convert defendant's motion for dismissal into one seeking summary judgment. In assessing the legal sufficiency of the complaint, the Court may consider the facts as alleged in the complaint, as well as documents incorporated into the complaint by reference, and matters of which judicial notice may be taken. See Wagener v. SBC Pension Benefit Plan, 407 F.3d 395, 397 (D.C. Cir. 2005) (noting that in reviewing district court's grant of motion to dismiss, the court could refer to "exhibits attached to, and the documents incorporated by reference in, the complaint."); Kaempe v. Myers, 367 F.3d 958, 965 (D.C. Cir. 2004) (court could consider documents that "are public records subject to judicial notice on a motion to dismiss.") (citing EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 (D.C. Cir. 1997) (other citations omitted). The only document truly relied upon for dismissal is plaintiff's accommodation request, which is referred to in plaintiff's complaint. Compl. ¶ 5.

upon mere allegations or denials but must come forth with evidence establishing a material issue of fact for trial. Id. at 248. The mere existence of some factual dispute is insufficient to withstand summary judgment; there must be a genuine issue of material fact. Id. at 247-48. If the submitted evidence is of such a character that it would not permit a reasonable fact-finder to find in favor of the non-moving party, summary judgment is appropriate. Id. at 251.

The undisputed evidence in this matter demonstrates that plaintiff did not timely contact an EEO counselor concerning her claim of disability discrimination, and that plaintiff has failed to state a viable claim under the Rehabilitation Act. Thus dismissal, or alternatively, summary judgment should be granted in defendant's favor as it concerns this claim.

## ARGUMENT

Plaintiff's claim under the Rehabilitation Act should be rejected by the Court for two separate reasons. First, to the extent that plaintiff alleges a failure to accommodate claim under the Act, she never properly exhausted this claim, requiring dismissal. Second, plaintiff cannot establish that she is an individual protected under the Act because she is not a qualified individual with a disability. For these two separate but compelling reasons, the Court should dismiss, or alternatively, grant defendant summary judgment, as it concerns plaintiff's Rehabilitation Act claim.

### I. PLAINTIFF FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES CONCERNING HER FAILURE TO ACCOMMODATE CLAIM.

Prior to seeking relief in federal court pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 701, a federal employee must timely exhaust all available administrative remedies. See 42 U.S.C. § 2000e-16(c)); 29 C.F.R. § 1614.407; Kizas v. Webster, 707 F.2d 524, 544 & n.99

(D.C. Cir. 1983); see, e.g., Robinson v. Chao, 403 F. Supp. 2d 24, 28 (D.D.C. 2005); Raines v. United States Dep't of Justice, 424 F. Supp. 2d 60, 65 (D.D.C. 2006).[5] Before a complainant can file a formal discrimination complaint, she must first consult an EEO counselor to try to resolve the matter informally. 29 C.F.R. § 1614.105(a). Contact with an EEO counselor must occur "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). If the matter is not resolved informally, the complainant may then file a formal complaint against the agency within 15 days of receipt of notice from the EEO counselor. 29 C.F.R. § 1614.105(d).

Courts have strictly enforced the time deadlines throughout the complaint process. Brown v. Marsh, 777 F.2d 8, 13 (D.C. Cir. 1985) ("A plaintiff who fails to comply, to the letter, with administrative deadlines ordinarily will be denied a judicial audience."); see also Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1994); Raines, 424 F. Supp. 2d at 65-66 ("Dismissal results when a plaintiff fails to exhaust administrative remedies.") (citations omitted); Carter v. Rubin, 14 F. Supp. 2d 22, 32 (D.D.C. 1998) (holding that federal employees may not file employment discrimination actions outside applicable time deadlines).

Plaintiff in this case never contacted an EEO counselor seeking to file an EEO complaint concerning her claim that she was denied a reasonable accommodation. Because plaintiff did not contact an EEO counselor within 45 days of the denial of her request, dismissal is required.

---

[5]"Section 501 is the exclusive remedy for federal employees alleging disability discrimination by a federal agency." Raines, 424 F. Supp. at 65 (citations omitted). Regulations promulgated by the Department of Labor require federal courts to use the standards applicable to claims brought pursuant to the Americans with Disabilities Act in determining whether section 501 of the Rehabilitation Act has been violated. 29 C.F.R. § 1614.203.

Raines, 424 F. Supp. 2d at 67 (dismissing plaintiff's Rehabilitation Act claim where the plaintiff "did not contact an EEO counselor within the 45 days of the alleged wrongful termination . . . ."); Wilderness v. Snow, No. Civ.A. 04-0708, 2006 WL 571930, at *3 (D.D.C. Mar. 4, 2006) (holding that plaintiff's request for a "work at home" accommodation under the Rehabilitation Act was untimely because she did not contact an EEO counselor within 45 days of the denial of that request).

## II. PLAINTIFF IS NOT A QUALIFIED INDIVIDUAL WITH A DISABILITY UNDER THE REHABILITATION ACT.

Plaintiff's claim under the Rehabilitation Act suffers from a second, fatal defect: she cannot establish that she is a qualified individual with a disability, as required for her to be included within the Act's protection.

To establish a prima facie case of discrimination under the Rehabilitation Act for failure to accommodate, a plaintiff must show (1) that she was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of her disability; (3) that with reasonable accommodation she could perform the essential functions of the position; and (4) that the employer refused to make such accommodations. Edwards v. U.S. E.P.A., 456 F. Supp. 2d 72, 97 (D.D.C. 2006); Thompson v. Rice, 422 F. Supp. 2d 165-66 (D.D.C. 2006). Thus, the two-fold threshold question under the Rehabilitation Act is (1) whether a plaintiff is an individual with a disability who (2) is "otherwise qualified" to perform his or her job. Mack v. Strauss, 134 F. Supp. 2d 103, 109 (D.D.C.), aff'd, 2001 WL 1286263 (D.C. Cir. 2001). See also 29 U.S.C. § 794(a). In this case, plaintiff is not disabled because her alleged disability stems solely from her dissatisfaction working with one supervisor. A second independent reason that plaintiff cannot

establish a claim under the Rehabilitation Act is her failure to show that any of her major life activities are significantly limited as a result of any alleged disability she may have.

### A. Plaintiff is Not Disabled Within the Meaning of the Rehabilitation Act Because Her Alleged Impairment Does Not Have a Permanent or Long-Term Impact.

"A person is disabled under the Rehabilitation Act if he 'has a physical or mental impairment which substantially limits one or more of [his] major life activities; has a record of such an impairment; or is regarded as having such an impairment." Thompson, 422 F. Supp. 2d at 166 (quoting 29 U.S.C. § 705(20)(B)). In making a determination of whether plaintiff is disabled, the Court can refer to the standards utilized by the Americans with Disabilities Act, ("ADA"). See 29 U.S.C. § 794(d) ("The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under Title I of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12111, et seq.)); Thompson, 422 F. Supp. 2d at 166 & n.6 ("The liability standards of the Rehabilitation Act and the ADA are the same in employment discrimination cases, and thus cases interpreting either statute are applicable in defining the terms 'disability' and otherwise determining liability.") (citing 29 U.S.C. § 794(d)). "It is the plaintiff's burden to prove that he is disabled." Haynes v. Williams, 392 F.3d 478, 482 (D.C. Cir. 2004).

Plaintiff cannot satisfy the definition of an individual with a disability as defined under the Act. Plaintiff cannot demonstrate that her alleged disability (psychiatric disorder, adjustment disorder with mixed disturbance of emotions conduct) posed a permanent/long-term and significant limitation on any of her major life activities. "Major life activities" include functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking,

breathing, learning and working." 29 C.F.R. § 1630.2(i); 45 C.F.R. § 84.3(j)(ii). To qualify as a disability, an impairment's impact must be "permanent or long-term." Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002) (citing 29 C.F.R. § 1630.2(j)(2)(ii)-(iii) (2001)). Under ADA regulations pertinent to determining whether an individual is substantially limited in a major life activity, factors to consider are: (1) "[t]he nature and severity of the impairment;" (2) "[t]he duration or expected duration of the impairment;" and (3) "[t]he permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment[.]" 29 C.F.R. § 1630.2(j)(2).

Plaintiff does not have a physical impairment that meets any of these criteria. As set forth in her request for a reasonable accommodation, plaintiff was only impacted by her alleged disability when she was working with her prior supervisor, Mr. Sullivan. Specifically, plaintiff contended:

> Because of the anxiety caused by supervisor who discriminates against me by watching every single minute of my day, and accusing me of not being at my desk when I am, I can no longer perform the duties of a regular, capable employee. To function at all, I must take tranquilizers before coming to work, a mild sleeping pill to get through the night with adequate sleep, and a stress reducer. All of this medication, that I have never taken all together, is causing me to lose energy, have headaches, and perform poorly outside of work . . . I am well educated and very capable of 'complex' projects.

Ex. A, at 2. This description of her alleged disability readily demonstrates that the impairment plaintiff alleges is entirely the result of her adverse reaction to working for one particular supervisor, Mr. Sullivan. The sole cause of the impairment is further evidenced by the accommodation plaintiff sought, i.e., reassignment or the ability to work another job or detail. Ex. A, at 2; Ex. C, at 4. At no time did plaintiff contend that she would be unable to work if she

was reassigned to another position. Rather, she asserted that she was perfectly capable of working in other positions and would only continue to suffer the effects of her alleged "disability" if she had to work with her supervisor, Mr. Sullivan.

A "disability" with such transient impairments does not qualify for purposes of the Rehabilitation Act. See Haynes, 392 F.3d at 483; Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132,142-43 (D.D.C. 2004) (holding that hypertension that was controlled by medicine except when plaintiff was subjected to stress at work was not a disability: "Unfortunately for plaintiff, a person whose daily life activities are not substantially limited, even though her performance at work is subject to physical limitations, is not disabled.") (citing Toyota, 534 U.S. at 201-02), amended on reconsideration in part, 400 F. Supp. 2d 257 (D.D.C. 2005). Significantly, in Haynes, the District of Columbia Circuit specifically rejected the notion that an impairment that manifests itself only in the workplace could render an employee substantially limited in a major life function. Id. The employee there contended that he developed a "severe medical condition" that was exacerbated by his work environment and caused him to itch incessantly, resulting in him being unable to get sufficient sleep. Id. at 480. Because of his difficulties sleeping, the employee failed to timely report to work and was eventually terminated. Id. at 481. The employee filed a lawsuit against his employer pursuant to the ADA and the Rehabilitation Act. Id. & n.1. In concluding that the employee had failed to establish that he was substantially limited in the major life activity of sleeping, the court stated:

> If [the employee] could have avoided the [impairment's impact of] itching that seriously affected his sleep by simply working at a different location, then he was not 'substantially limited' in the major life function of sleeping. Indeed, were we to hold that a plaintiff can recover under the ADA based on a condition that becomes limiting only when he works

> in a single building, we would transform the ADA into an occupational safety and health statute.

Id. at 483 (footnote omitted). Thus, the D.C. Circuit has made clear that "[i]f the impact of an impairment can be eliminated by changing the address at which an individual works, that impairment is neither permanent nor long term." Id. See also Coleman-Adebayo, 326 F. Supp. 2d at 142-43 (holding that hypertension was not a disability under the Rehabilitation Act where "[t]he only circumstances in which plaintiff's hypertension is not controlled by medication is when she is working in an EPA office."). Because her impairment is only triggered when she is working under Mr. Sullivan's supervision, plaintiff does not have an impairment that qualifies for protection under the Rehabilitation Act.

**B. Plaintiff is Not Disabled Within the Meaning of the Rehabilitation Act Because She is Not Significantly Limited in Any Major Life Activity.**

Plaintiff also does not qualify for protection under the Rehabilitation Act because she is not significantly limited in any major life activities. The Supreme Court has held that "major" life activities means activities that "are of central importance to daily life." Toyota, 534 U.S. at 198. This comports with the "demanding standard" that Congress intended to enable an individual to qualify for coverage under the Act. Id. See also Bragdon v. Abbott, 524 U.S. 624, 639 (1998) ("major life activities include those "central to the life process itself."). Furthermore, the U.S. Equal Employment Opportunity Commission's regulations define "major life activity" by way of example, as those including "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." See 29 C.F.R. § 1630.2(i); 45 C.F.R. § 84.3(j)(ii).

In her complaint, plaintiff claims that her alleged disability limited the major life activity

of working. Compl. ¶ 5 ("Plaintiff then filed a mixed case appeal, alleging reprisal for prior EEO activity and discrimination based upon disability . . . that substantially limited the major life activity of working . . . .").[6] However, a brief review of plaintiff's request for an accommodation belies any contention that she is significantly limited in the major life activity of working because she cannot show that she is precluded from performing a broad range of jobs, rather than working for a specific supervisor. Coleman-Adebayo, 326 F. Supp. 2d at 143 & n.7 ("To establish a substantial limitation on the major life activity of working, plaintiff would have to allege and prove . . . '[her] impairment prevents [her] from performing a 'substantial class' or 'broad range' of jobs otherwise available to [her]' rather than demonstrating that she is unable to do her specific job.") (citations omitted). See also Haynes, 392 F.3d at 483 ("If the impact of an impairment can be eliminated by changing the address at which an individual works, that impairment is neither permanent nor long term."); Thompson, 422 F. Supp. 2d at 171 (holding that plaintiff's Rehabilitation Act claim could not "succeed because she has not shown that she is excluded from a substantial class or broad range of jobs. Her characterization of the broad range of jobs as 'working in the Foreign Service' is inconsistent with the standards articulated [by the Supreme Court and District of Columbia Circuit]."); Stroman v. Blue Cross & Blue Shield Ass'n, 966 F. Supp. 9, 11 (D.D.C. 1997) (granting defendant judgment as a matter of law on plaintiff's disability claim where "[p]laintiff was not precluded by her claimed disability from

[6]Nowhere in her request for reasonable accommodation or request for reconsideration of her request did plaintiff contend she was significantly limited in the major life activity of working. In fact, she indicated that once she was reassigned to another position she would be able to conduct "the superior level of work I have always performed, but cannot do now." Ex. A, at 3. See also id. at 2 ("I am well educated and very capable of 'complex' projects."); Ex. C, at 4 ("A return to an office without the stress, harassment and complicity in my demise would again make me productive.").

working generally . . . and her alleged inability to perform a *particular* job or work for a *particular* supervisor will not, without more, qualify her as disabled.") (citation omitted), aff'd, 159 F.3d 637 (D.C. Cir. 1998). "This assumes, of course, that working qualifies as a major life activity, a premise that the Supreme Court has questioned." Coleman-Adebayo, 326 F. Supp. 2d at 143 & n.7 (citations omitted).

Plaintiff does not allege that she is significantly limited in any other major life activities in her complaint. In her initial request for a reasonable accommodation, plaintiff did not specify which, if any, major life activities she believed were significantly limited by her alleged disability. Rather, she stated that her medical condition and the medications she was taking caused her to "make mistakes regularly in my home life, in driving. . . and in forgetting appointments." Ex. A, at 2. In her request for reconsideration of her reasonable accommodation request, plaintiff contended that her alleged disability has "affected my daily activities, (inability to carry out normal daily activities, including reading the newspaper or doing the laundry regularly), my sleep, my concentration, and caring for myself." Ex. C, at 2. While plaintiff did claim that her sleep, concentration, and caring for herself were "affected," she did not contend that she was "significantly" limited in any of these activities. Although she described her alleged "inability" to read the newspaper and do the laundry regularly as an impact of her alleged disability, it is dubious that such activities qualify under the Rehabilitation Act as "major life activities." See, e.g., Corley v. Department of Veterans Affairs, 218 Fed. Appx. 727 (10th Cir. 2007) (holding that grocery shopping and caring for one's children were not, "standing alone . . . sufficiently significant to qualify as a major life activity as compared to the enumerated major life activities under the Rehabilitation Act regulations. . . . Again neither can be said to be central

to daily life.") (citations omitted); Marinelli v. City of Erie, 216 F.3d 354, 362 (3d Cir. 2000) (holding that "doing housework" does not qualify as a major life activity); Colwell v. Suffolk Cty. Police Dep't, 158 F.3d 635, 643 (2d Cir. 1998) (holding that going shopping in the mall with one's spouse could not "reasonably be deemed [a] major [life]" activity that qualified under the ADA), cert. denied, 119 S. Ct. 1253 (1999). See also Battle v. Mineta, 387 F. Supp. 2d 4, 8 (D.D.C. 2005) (holding that "the ability to 'interact positively with others' is not a major life activity . . . ."), aff'd, No. Civ.A. 05-5413, 2006 WL 3093811, at *1 (D.C. Cir. May 22, 2006). However, even assuming that plaintiff articulated limitations in major life activities in her request for an accommodation, the impairments cited by plaintiff could not be "significant limitations" because, as noted above, her impairments were attributed directly to her having to work under the supervision of Mr. Sullivan, and thus were not permanent or long-term.

Because she cannot establish that her alleged disability significantly limits any of her major life activities, plaintiff's claim under the Rehabilitation Act must fail.

**CONCLUSION**

For the reasons set forth above, defendant requests that plaintiff's claim under the Rehabilitation Act be dismissed or, alternatively, that judgment be entered in defendant's favor as a matter of law.

Respectfully submitted,

/s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR # 434122

Assistant United States Attorney

/s/ Michelle N. Johnson

MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

**COUNSEL FOR DEFENDANT**

Of Counsel:

A. Wade Norman
Office of the General Counsel
United States Department of Treasury
1500 Pennsylvania Avenue, NW
Washington, DC 20220

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**MARGARET ELAINE RAND**

**Plaintiff,**

**v.**

**HENRY K. PAULSON,**
**Secretary of the Treasury,**

**Defendant.**

**Civil Action No.: 08-703 (PLF)**

**DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to LCvR 56.1 and 7(h), Defendant, Henry K. Paulson, Secretary of the Treasury, respectfully submits this statement of material facts as to which there is no genuine issue in support of his motion for partial summary judgment.

1. On June 28, 2006, plaintiff filed a request for an accommodation. In this request, plaintiff contended that due to the "anxiety caused by supervisor who discriminates against me by watching every single minute of my day, and accusing me of not being at my desk when I am, I can no longer perform the duties of a regular, capable employee." Exhibit ("Ex.") A, Request for Reasonable Accommodation, at 2.

2. As an accommodation, plaintiff sought to be immediately detailed to another position in Domestic Finance, in the Office of Financial Education. Id. at 2-3. She indicated that she "believe[d] that this other environment would allow me to reconnect with the superior level of work I have always performed, but cannot do now." Id.

3. In a decision dated August 1, 2006, plaintiff's supervisor, James Sullivan, denied her

request for an accommodation. Ex. B, Decision on request for reasonable accommodation.

4. In denying plaintiff's request, Mr. Sullivan indicated that plaintiff failed to establish that she had a disability affecting a major life activity. Id. The letter informed plaintiff that she could seek reconsideration of Mr. Sullivan's decision by writing to him. Id.

5. Mr. Sullivan's letter also informed plaintiff that she had the right to file an EEO complaint, pursue an appeal to the Merit Systems Protection Board, or file an administrative grievance. Id. at 1-2. Significantly, the letter informed plaintiff that in order to file an EEO complaint, plaintiff had to contact the "DO EEO Officer to be assigned an EEO Counselor within 45 days from the date of this notice of denial of reasonable accommodation." Id.

6. Plaintiff sought reconsideration of her request for an accommodation on February 12, 2007. Ex. C, Reconsideration for Reasonable Accommodation.

7. In her request for reconsideration, plaintiff stated that, since July 3, 2006, the date she suffered a panic attack due to alleged harassment in the work place, she has been diagnosed with Adjustment Disorder and Mixed Anxiety and depressed mood. Id. at 2. Plaintiff contended that this illness, which "would be aggravated seriously by a return to my current work situation" has affected her ability to carry out normal daily activities, "including reading the newspaper or doing the laundry regularly[ ], my sleep, my concentration, and caring for myself." Id.

8. As an accommodation, plaintiff sought "a reassignment to another office or other job situation for which I am suited." Id. at 4. Plaintiff contended that this "requested accommodation would allow me to work without the duress of not knowing when the next accusation or berating of my work would occur." Id.

9. At no time in her request for reconsideration did plaintiff indicate that she had consulted with an EEO counselor for the purposes of initiating an EEO complaint concerning her request

for a reasonable accommodation.

10. At no time in her request for a reasonable accommodation or her request for reconsideration did plaintiff contend that she was significantly limited in any major life activities. See generally Exs. A &C.

11. Plaintiff specifically indicated that she would be able to perform the essential functions of her job if she was to be reassigned. Ex. A, at 3.

Respectfully submitted,

/s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

**COUNSEL FOR DEFENDANT**

Of Counsel:

A. Wade Norman
Office of the General Counsel
United States Department of Treasury
1500 Pennsylvania Avenue, NW
Washington, DC 20220

# EXHIBIT A

# ATTACHMENT A: SAMPLE REASONABLE ACCOMMODATION REQUEST FORM

| Request for Reasonable Accommodation | |
|---|---|
| **Applicant/Employee Name**<br>M. Elaine Rand | **Office Location and Address**<br>U.S. Department of the Treasury, Departmental Offices<br>1500 Pennsylvania Avenue, NW, MS 6146<br>Washington, DC 20220 |
| **Occupational Series and Grade**<br>GS-343-13 | **Office Telephone Number:** (202) 622-8841 |

| |
|---|
| Briefly describe the medical condition requiring accommodation.<br><br>See attached page for answer to this question. |
| Briefly describe the specific accommodation being requested. (If additional space is needed, attach a separate sheet.)<br><br>See attached page for answer to this question. |
| Explain how the requested accommodation would assist you in: (1) performing the essential duties of your position, (2) using the job application process, or (3) taking advantage of a benefit or privilege offered by the office/bureau.<br><br>See attached page for answer to this question. |

Requester Signature: M Elaine Rand

Date: June 28, 2006

**Attachment for answers to the three questions on previous page (Attachment A)**
**(M. Elaine Rand, GS-343-13)**

*Briefly describe the medical condition requiring accommodation.*

Because of the anxiety caused by supervisor who discriminates against me by watching every single minute of my day, and accusing me of not being at my desk when I am, I can no longer perform the duties of a regular, capable employee. To function at all, I must take tranquilizers before coming to work, a mild sleeping pill to get through the night with adequate sleep, and a stress reducer. All of this medication, that I have never taken all together, is causing me to lose energy, have headaches, and perform poorly outside of work. Also, I am told that every product I turn in is a failure. Supervisor has reduced my work to clerical duties (tasks lasting 15 minutes to 1 hour) claiming I am not capable of "complex projects" although I received two Superior annual performance ratings in the past two years under other supervision. I am well educated and very capable of "complex" projects. My resume highlights my accomplishments with many complex projects. I feel depressed by being harassed every day and watched every minute. It is humiliating for a professional.

I have tried mediation and other means of resolving this situation, but now I am reduced to taking tranquilizers every day to come to work. Supervisor writes accusatory, extremely negative emails every morning and insists that I read them the minute I show up at my desk. His punishing actions escalate every week. Right now I am forced to write on an office-wide white board every minute I spend away from my desk that lasts longer than 15 minutes, bathroom breaks included.

All of his actions humiliate me as he knows and schemes: location of desk in secretary's bay (while everyone else at my level has a private office), emailing him when I go and return from the bathroom, etc. And yet he does not hesitate to increase the anxiety and stress daily. No one is restraining his out-of-control behavior.

This medical condition and excess, never-before-used medications causes me to make mistakes regularly in my home life, in driving (I nearly had 3 run-ins to other vehicles recently although my driving record has been perfect for over 20+ years), and in forgetting appointments. The effect of taking tranquilizers and a recently-prescribed doubled dosage of Welbutrin (medication for extreme stress), every day is damaging my health and my life in general. I am not able to function properly at work or at home any longer.

*Briefly describe the specific accommodation being requested. (If additional space is needed, attach a separate sheet.)*

By agreement in a mediation session, supervisor agreed to allow me to seek another job or detail. I found a six-month detail for which I applied. I was interviewed, the office reviewed my resume and last performance appraisal, and asked me to join them for the detail. Despite his promise, supervisor refused to allow me to go on this detail. I am requesting that I be allowed to go on this detail immediately. I believe that I will be able to perform my duties as well as the time before being subjected to this current supervisor. I believe that this other environment would allow me to

reconnect with the superior level of work I have always performed, but cannot do now. I checked with the office of the detail yesterday, and they are still very interested in having me join them. The detail is located in Domestic Finance, in the Office of Financial Education.

*Explain how the requested accommodation would assist you in: (1) performing the essential duties of your position, (2) using the job application process, or (3) taking advantage of a benefit or privilege offered by the office/bureau.*

The requested accommodation would assist me in:

(1) performing the essential duties of my position by not subjecting me to constant harassment, discrimination and extreme inspection of every detail of my work life. I have performed the essential duties of my position in every other job I have ever held, at Treasury, at Education, and in the private sector over the past 20 years. As a normal, qualified candidate for work at my level, I could help Treasury accomplish its mission if I could work under normal circumstances.

(2) using the job application process by being allowed to seek other positions in my spare time at home without the stress I am now enduring. Although the detail to which I would like to be assigned offers a slight possibility of permanent employment, that is very uncertain now, so they would understand and allow me to pursue other opportunities before the end of my detail with them.

(3) taking advantage of a benefit or privilege offered by the office/bureau by performing work that I am passionate about and helping an office whose job is important. At the recent G-8 conference in Russia, financial education was discussed! Thus, this is becoming a very important area for Americans and I am qualified to offer my expertise, my writing and speaking abilities and other traits to this detail (as proved by my being offered the detail). This detail would allow me a great opportunity to learn and to contribute to the necessary job of educating our youth about how to deal with their financial dealings in life. This and other administrations have recognized the need for financial education and this administration has taken that vision and applied it realistically at Treasury.

# EXHIBIT B



DEPARTMENT OF THE TREASURY
WASHINGTON, D.C. 20220

AUG 0 1 2006

MEMORANDUM FOR M. ELAINE RAND

FROM: James Sullivan James H. Sullivan
Director, Office of Competitive Sourcing

SUBJECT: ***Decision on request for reasonable accommodation***

This is in response to your request for reasonable accommodation made to Gloria Booze, the Departmental Offices EEO Officer, on June 29, 2006. Your medical documentation was received by the EEO Officer on July 5, 2006. You requested a reassignment to another position as reasonable accommodation.

The medical information consisted of written statements from a physician and a licensed social worker. With respect to your position in this office, the physician wrote that you are "unable to return to this stressful environment and be able to function." July 5, 2006 letter from Raymond Band, M.D. The social worker wrote: "Though I have worked with Ms. Rand to explore every possible constructive avenue to resolve these issues internally, there no longer appears to be a realistic prospect for satisfactory resolution of these issues within the Office of Competitive Sourcing." June 26, 2006 letter from E. Honnold, L.I.C.S.W.

The Departmental Offices EEO Officer reviewed your request and consulted with the Office of General Counsel. Based upon that review, the agency has concluded that you have not established that you have a disability affecting a major life activity. The applicable regulations provide:

(3) With respect to the major life activity of working--
(i) The term "substantially limits" means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i) (italics supplied). Your medical information does not support a finding that you are significantly restricted in the ability to perform a class or broad range of jobs. Therefore, you do not have a "disability" as that term is defined at 29 C.F.R. § 1630.2(g). If you do not have a disability, you are not entitled to reasonable accommodation.

If you would like reconsideration for this request, please do so in writing to me. You may also present any additional information in support of your request. I will respond to you in writing regarding a decision. If I do not reverse my decision, you may file an appeal to be decided by the Deputy Assistant Secretary (Human Resources.) You also have the right to file an EEO

Complaint, pursue an appeal to the Merit System Protection Board with respect to an appealable action under 5 C.F.R. § 1201.3 or file an administrative grievance. To file an EEO Complaint pursuant to 29 C.F. R. Part 1614, contact the DO EEO Officer to be assigned an EEO Counselor within 45 days from the date of this notice of denial of reasonable accommodation. To initiate an appeal to the Merit Systems Protection Board with 30 days of an appealable adverse action as defined in 5 C.F.R. § 1201.3 or to file an administrative grievance contact the Departmental Offices Office of Human Resources.

______________________________ ______________

Acknowledgment of Receipt Date

# EXHIBIT C

# ATTACHMENT A: SAMPLE REASONABLE ACCOMMODATION REQUEST FORM

| Request for Reasonable Accommodation | |
|---|---|
| **Applicant/Employee Name**<br>M. Elaine Rand | **Office Location and Address**<br>U.S. Department of the Treasury, Departmental Offices<br>1500 Pennsylvania Avenue, NW, MS 6146<br>Washington, DC 20220 |
| **Occupational Series and Grade**<br>GS-343-13 | **Office Telephone Number:** (202) 622-8841 |

| |
|---|
| Briefly describe the medical condition requiring accommodation.<br><br>See attached page for answer to this question. |
| Briefly describe the specific accommodation being requested. (If additional space is needed, attach a separate sheet.)<br><br>See attached page for answer to this question. |
| Explain how the requested accommodation would assist you in: (1) performing the essential duties of your position, (2) using the job application process, or (3) taking advantage of a benefit or privilege offered by the office/bureau.<br><br>See attached page for answer to this question. |

Requester Signature: M. Elaine Rand

Date: 2-12-07

**MEMORANDUM**

**TO:** James Sullivan

**FROM:** Elaine Rand

**DATE:** February 12, 2007

**SUBJECT:** Reconsideration for Reasonable Accommodation

As stated in the Memorandum of August 1, 2006 from you, this is a reconsideration of my original request for reasonable accommodation that you offered (no timeframe). I have additional information, and my situation conforms to the ADA definition of disability: one mental, one physical.

The paragraphs below conform to the official questions on the "Request for Reasonable Accommodation" form from Treasury, attached, signed and dated. In my previous request, not having been properly advised on its content or description, I had understood it only to concern the situation in the summer of 2006. Now I understand that all disabilities should be described in such a document. The documentation also states that the FOH Health official (Nancy?) is supposed to review this document. She was not included last time. Please do that this time. Thank you.

<u>Physical Disability</u>

*1. Briefly describe the medical condition requiring accommodation.*

My physical disability is very limited walking/taking stairs because of bad knees. The condition became more serious when I was working under ASM T. Ressell. Before that, I was able to walk the one mile to work from home. Finally, in late 2004 when Treasury was using the 15th Street entrance only for the disabled with permission, I realized that without such a permit, I would have to walk 4 city blocks from Met Square to MT when I needed to go over there. The 15th Street entrance was directly across the street from Met Square.

I asked for an exception from Norm Foote and Secret Service, but they said I needed a letter from the doctor. So my Orthopedic Specialist, Dr. Peter A. Moskovitz, wrote a letter to Treasury on February 22, 2005 for me to have access. Since then, I have also been put on the list for "ENA" (Employee Needing Assistance) in case of a fire.

*2. Briefly describe the specific accommodation being requested.*

When we had a fire drill system set up in Met Square, I was told, as an ENA, that I should go to the elevator banks (not the Exit for stairs that everyone else took) and wait for a special safety "official" with a bright-colored vest to escort me out of the building. There are no special "slides" for steps as I have seen in the Treasury Annex. Thus, it was a matter of my not being able to walk down 6 flights of steps.

When a fire drill test was tried out in the building, I went to the elevator bank, and never saw anyone who would be the safety official. Thus, since it was a fire drill, I took the elevator down. In a real fire, I believe one is not allowed to use the elevator. So I do not know how I was supposed to exit the building safely.

Because of this mishap, which would have been life-threatening in a real fire situation, I am requesting a move to the first or second floor in MT or the Annex so that in a real emergency, if the proper procedures were not followed, I would be able to get assistance to get out of the building. With only one or two flights of stairs, exiting would not be life-threatening, and almost anyone could help me without special equipment.

*3. Explain how the requested accommodation would assist you in: (1) performing the essential duties of your position, (2) using the job application process, or (3) taking advantage of a benefit or privilege offered by the office/bureau.*

This accommodation would put me at ease in doing my job so that I would not worry about my safety in case of a fire. In addition, this is a benefit that Treasury/Management can offer me and I would like to take advantage of it. Both MT and the Annex are Accessible.

Section 202 of the Act, 42 U.S.C. § 12132, provides,

Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. A "public entity" is defined in title II to include "any department, agency ... or other instrumentality of a State ... or local government."

<u>Mental Disability</u>

*1. Briefly describe the medical condition requiring accommodation.*

Since July 3, 2006, the date of my panic attack caused by the harassment in the work situation, two qualified Mental Health professionals, one Board Certified in Psychiatry, Dr. Raymond Band, and the other a L.I.C.S.W. Social Worker and Therapist, Edward Honnold, J.D. have written letters describing my escalating illness and requesting a reassignment "in order to be productive." These letters and forms are attached.

I have been diagnosed with the disability of Adjustment Disorder and Mixed Anxiety and Depressed Mood, DSMIV 309.28. The doctors have determined that this illness is not limited, is episodic, and would be aggravated seriously by a return to my current work situation. It has affected my daily activities (inability to carry out normal daily activities, including reading the newspaper or doing the laundry regularly), my sleep, my concentration, and caring for myself. There is no "ending" date when I might return to normal.

The letters describe many of these or the mental health professionals have heard about them in sessions with me. Dr. Band has had to increase my medication three times since the onset of the panic attack. As I stated in my "Appeal for Immediate Reassignment" on June 16, 2006, I was already taking tranquilizers just to go to work and get through the day. That document is attached. Below I have quoted official sources on mental disability since Treasury did not seem to recognize it when I applied earlier.

As quoted from the ADA website, "The Department received many comments on the proposed rule's inclusion of the word "temporary" in the definition of "disability." The preamble indicated that impairments are not necessarily excluded from the definition of "disability" simply because they are temporary, but that the duration, or expected duration, of an impairment is one factor that may properly be considered in determining whether the impairment substantially limits a major life activity."

Below are excerpts from the EEOC (which Treasury uses in their reasonable accommodation policy).

**Summary of the new EEOC Enforcement Guidance on the ADA and Psychiatric Disability**

"Substantial limitation of a major life activity. Under Test A, the impairment must be one that "substantially limits a major life activity." Major life activities include such things as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

"The guidance expands the list of major life activities to include those relevant to psychiatric disability. An employee wishing to establish that he or she has a covered disability must show substantial limitation of a major life activity. The guidance includes such activities as "thinking, concentrating, interacting with others, caring for oneself, speaking, performing manual tasks, or working. Sleeping is a also a major life activity..."

Also, from the EEOC Enforcement guidelines, "The agency affirms that "episodic conditions may constitute substantially limiting impairments if they are substantially limiting when active or have a high likelihood of recurrence in substantially limiting forms."

The guidance sets out examples of these disabilities and states that they, "may be episodic over the course of months or years. Accordingly, even if a disability is not currently active, an employee who needs an accommodation to continue controlling symptoms can be covered by the ADA."

2. *Briefly describe the specific accommodation being requested.*

The accommodation can take many forms, as cited below, but it must certainly take me out of my current work situation. The Psychiatrist has said over and over that I cannot return to that work situation. I am requesting a reassignment to another office or other job situation for which I am suited. I am a Management Analyst and have already held several positions at DO where I was successful. There are positions in every part of DO that use Management Analysts. A return to an office without the stress, harassment and complicity in my demise would again make me productive.

The EEOC guidance gives several examples of potential accommodations, including modifications to work schedules or policies, physical changes to the workplace, adjusting supervisory methods, providing a job coach, and reassignment to a different position.

Treasury's policy states:

"Reasonable Accommodation. An adjustment or alteration that enables a qualified person with a disability to apply for a job, perform job duties, or enjoy benefits and privileges of employment.

"Reassignment. A form of reasonable accommodation that, absent undue hardship, is provided to employees who, because of a disability, can no longer perform the essential functions of their job, with or without a reasonable accommodation."

From EEOC NOTICE 915.002,

"13. '[W]ith or without reasonable accommodation' includes, if necessary, reassignment to a vacant position. Thus, if an employee is no longer qualified because of a disability to continue in her/her present position, an employer must reassign him/her as a reasonable accommodation. See the section of "Reassignment," intra pp. 37-38 and p.77."

3. *Explain how the requested accommodation would assist you in: (1) performing the essential duties of your position, (2) using the job application process, or (3) taking advantage of a benefit or privilege offered by the office/bureau.*

The requested accommodation would allow me to work without the duress of not knowing when the next accusation or berating of my work would occur. It would completely free me of the harassment that was unbearable and would have been for anyone. In the spring and summer of 2006, the harassment was daily. It would give me a chance to be useful and productive which is not true in the current situation, as this is the only situation where my work was not valued. It would return to Treasury an experienced, highly-skilled employee.

I would be able to finish my career as intended, instead of being forced into the situation pending. A retirement date is my decision, not Treasury's. The accommodation would allow me to continue to build up my TSP account and my annuity (small in the FERS system) so that I could retire without financial worries. I expect that I will live a long life as my family has.

Attachments

ATTACHMENT
MEDICAL LETTERS RE RAND

| Date | Medical Professional |
|---|---|
| 06-26-06 | Edward Honnold, J.D., L.I.C.S.W. |
| 07-01-06 | Raymond I. Band, M.D. (Board Certified in Psychiatry) |
| 07-05-06 | Band |
| 07-05-06 | Honnold |
| 07-28-06 | Honnold |
| 08-29-06 | Band (Dept. of Labor Questionnaire) |
| 09-17-06 | Honnold |
| 09-21-06 | Honnold |
| 10-02-06 | Band (Dept. of Labor Questionnaire) |
| 12-29-06 | Band |
| 01-02-07 | Honnold |

# EXHIBIT D

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
WASHINGTON REGIONAL OFFICE

MARGARET E. RAND,
Appellant,

v.

DEPARTMENT OF THE TREASURY,
Agency.

DOCKET NUMBER
DC-0752-07-0471-I-1

DATE: October 4, 2007

Joel P. Bennett, Esquire, Washington, D.C., for the appellant.

Mark K. Hingston, Esquire, Washington, D.C., for the agency.

**BEFORE**
Edward F. Manning
Administrative Judge

**INITIAL DECISION**

The appellant filed an appeal from an agency action ordering her removal from a GS-13 Management Analyst position at its Departmental Offices in Washington, D.C., effective March 2, 2007.[1] Appeal File (AF), Tab 1. The record reflects that the appellant is a covered employee for purposes of appealing to the Board, that her appeal was timely filed, and that the Board has jurisdiction over the agency's action. 5 U.S.C. §§ 7511(a), 7512, 7513, 7701(a)-(j); 5 C.F.R. Part 752, Subpart D. For the following reasons, the agency's action is AFFIRMED.

---

[1] The appellant retired in lieu of involuntary action on February 28, 2007.

## BACKGROUND

The appellant was removed based on a charge of being unable to perform the duties of her position. AF, Tab 9, Subtabs 4c, 4f. She challenged the agency's action in the instant appeal, and raised the affirmative defenses of disability discrimination, harmful procedural error, and reprisal for prior equal employment opportunity (EEO) activity. AF, Tab 1. A hearing was conducted on June 18, 2007. Hearing Tapes at AF, Tab 21.

## ANALYSIS AND FINDINGS

An action taken under 5 U.S.C. § 7513 may be sustained on appeal only if it is supported by a preponderance of the evidence and is for such cause as will promote the efficiency of the service. 5 U.S.C. § 7701(c)(1). As a third element of its case, the agency must also show that the penalty is appropriate. *See Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 302 (1981).

### Legal standard

In removing an employee for inability to perform the duties of her position, an agency must establish a nexus between the employee's medical condition and deficiencies in her performance or conduct, or show a high probability of hazard that her condition may result in injury to herself or others. *See Spencer v. Department of the Navy*, 73 M.S.P.R. 15, 21 (1997).

### The agency's case on the merits and the appellant's response

Turning first to the agency's January 25, 2007 proposal letter, the proposing official, James Sullivan, the appellant's supervisor, stated the appellant was notified that, while her removal was being proposed in accordance with the adverse action provisions of chapter 75 of title 5, it was for non-disciplinary reasons. AF, Tab 9, Subtab 4f. The charge in her case was that she was unable to perform the duties of her position. *Id.*

The appellant was informed that on January 3, 2007, she had provided the agency with medical documentation indicating she suffered from an acute

psychiatric disorder that satisfied the diagnostic criteria for an adjustment disorder with mixed disturbance of emotions and conduct (DSM IV 309.4). The symptoms of this condition include panic, anxiety, and difficulty sustaining minimum standards of personal and professional activity. *Id.*

It was noted to the appellant that she had been absent from the work place since July 5, 2006, and while absent she had been unable to perform the duties of her position. *Id.* In addition, the medical documentation she provided stated she could not perform the duties of her position, did not indicate when she could return to work, said that she would be exposed to a severe risk of further deterioration of her condition if she was compelled to return to service in her "most recent place of employment," and indicated that while she was being treated medically and psychologically her condition was not improving. *Id.*

It was noted to the appellant that she had used all of her sick leave, annual leave, Family and Medical Leave Act (FMLA) leave, and had been in a leave without pay status. *Id.* It was further noted that while she had requested reasonable accommodation, her request was limited to being assigned to another position in a different office. *Id.* Her request was not granted because the agency concluded the medical information she provided did not show she had a disability as defined in applicable law and regulation. *Id.* She was informed that because she did not have such a disability, she was not entitled to a reasonable accommodation involving a reassignment, even if there was a vacant position for which she could qualify. *Id.*

The appellant was reminded that in an agency September 25, 2006 letter she had been directed to return to work by October 2, 2006, and that if she did not submit administratively acceptable medical documentation by that date, her absences after September 29, 2006, would be charged as absence without leave (AWOL). *Id.* She responded by submitting an FMLA form on October 2, 2006, signed by Dr. Raymond I. Band, M.D. that stated, in part:

> In the recent past, Ms. Rand has had episodes of Anxiety and Depression reacting to precipitating events in her life; thus I have seen her on occasion for Psychiatric and Psychopharmacological treatment. There was a return to full functioning rapidly except for these episodes. They were asymptomatic prior to the July 3, 2006 event. Her reaction then was to a level of decompensation not seen before. Her diagnosis is Adjustment Disorder with Mixed Anxiety and Depressed Mood (DSM IV 309.28). . . .

The proposing official noted that the "July 3, 2006 event" referenced by Dr. Band appeared to be a reference to the appellant's reaction to communications from him to her concerning her behavior and job performance. AF, Tab 9, Subtab 4f. In an email that date to her he requested she not combine her lunch with activities such as appointments with EEO counselors, so that she would not be away from the office for an extended period of time. *Id.* In a second email he requested she schedule a meeting, and in a third email he requested she remove the word "shit" from her written summary of a meeting. *Id.*

The proposal letter noted that Dr. Band stated that the onset of the appellant's current condition was July 3, 2006, and the probable duration would be until she had relief from her stressor at work. *Id.* The doctor said her prognosis was good, and a reasonable accommodation, i.e., a shift of her stressor, would enable her to return to her previous productive work. *Id.* As to whether the appellant could work intermittently or less than a full time schedule as a result of her condition, Dr. Band was quoted as stating she could not if she had to return to her current position; otherwise, she should be able to return to work. *Id.* He said that the appellant had been placed on anti-anxiety and anti-depressant medication and was being treated by him and a therapist. *Id.* She cannot concentrate, he said, and is subject to serious episodes of depression and anxiety. *Id.* She cannot control her mood, and cannot perform the duties of her position, which was the sole stressor of her current condition. *Id.*

The proposal letter noted that, although Dr. Band expressed hope for the appellant's recovery, he did not provide any anticipated date for her return to work without a reassignment to another position and/or office. *Id.*

The agency proposal letter noted that the appellant was placed on FMLA leave from October 2 to December 29, 2006. *Id.* On December 18, 2006, the agency, by letter, once again directed her to return to duty, on January 2, 2007, or to submit administratively acceptable documentation (medical or otherwise) by that date to justify her absence. *Id.* If she failed to do either, she was advised her absence beginning January 2, 2007, would be charged as AWOL. *Id.* She was further advised that unless she became available to work on a regular, continuing basis on January 2, 2007, the agency would have no choice but to initiate removal action in her case based on her inability to perform the duties of her position. *Id.*

The proposal letter stated that on January 3, 2007, the appellant filed documentation from two medical practitioners. *Id.* A letter dated January 2, 2007, signed by Edward Honnold,[2] stated that her psychiatric condition had been greatly aggravated by the severe and oppressive conditions present in the office to which she had been assigned. *Id.* In addition, he stated the appellant's acute impairment of her mental and physical functioning had not abated, and her symptoms prevented her from resuming her regular functions with the agency. *Id.* He also stated that she would be exposed to a severe risk of further deterioration of her condition if she was compelled to return to service in her most recent place of employment, and he had advised her, on mental health grounds, against reporting for duty. *Id.* He urged the agency to make alternative employment options available to the appellant so that she could "regain her health and restore her fundamental self-esteem." *Id.*

---

[2] Mr. Honnold is a Licensed Independent Clinical Social Worker (LICSW). AF, Tab 9, Subtab 4d.

The appellant was informed by the proposing official that in her position as a management analyst she was required to work with the head of the office to plan, develop, evaluate and implement a successful Competitive Sourcing Green Plan; complete and implement the MEO Implementation Directive, and assist, where necessary, on the President's Management Agenda, Program Assessment Rating Tool, and the "section 647" report. *Id.* Her duties required the application of expertise and knowledge in the area of the agency's organization and procedures as well as the ability to think, to prepare reports, to communicate effectively both orally and in writing, to render advice, and to make recommendations and decisions. *Id.*

The proposal letter continued, informing the appellant that, based on the information provided by Dr. Band and Mr. Honnold, it was determined that she had a medical condition that prevented her from reporting for work and performing the duties of her position. *Id.* Specifically, her medical documentation indicated she could not perform the duties of her position, which had become the sole stressor of her medical condition. *Id.*

The appellant was informed that despite a lengthy period of medical treatment and the agency's attempts to provide reasonable accommodation, including more than six months of leave, it appeared her condition had not changed, and her most recent medical documentation indicated her medical problems were continuing. *Id.* The appellant had not provided a date of anticipated return to work and it appeared her condition was such that her doctors were unable to offer an opinion as to when she might be able to do so. *Id.*

The appellant was reminded that, as she had previously been informed, her continued absence from work had a negative impact on the work and productivity of her office and had created increased workloads for her colleagues. *Id.* Her continued unavailability caused an undue burden on the office program and on its ability to carry out its responsibilities associated with operating and maintaining the infrastructure of a major facility. *Id.* There continued to be a critical need for

her position to be filled by an employee who was available to work on a full time basis, and her continued absence could on longer be accommodated. *Id.* Consequently, her removal was being proposed. *Id.*

The appellant responded in a February 12, 2007 written submission in which she referred to the medical submissions summarized in the proposal letter, asserting that she had been subjected to 5 ½ months of harassment by her supervisor that caused her to become ill. *Id.* at Subtab 4e. She said that she had a panic attack while at work on July 3, 2006, and that now her doctors "certified that she cannot return to that situation." *Id.* She claimed that the agency would not provide her with reasonable accommodation, stating that the medical documentation she provided should have been "used to propose a solution rather a removal." *Id.* She referred to her supervisor, the proposing official, as a "novice supervisor," took issue with a letter of reprimand she had received, claimed that another employee in the office, a Ms. Burtner, was "complicit in the harassment" she experienced, and that promises to accommodate her by reassigning her to another office did not materialize.[3] *Id.*

The agency's February 28, 2007 decision letter, from Martin Malone the appellant's second-level supervisor, stated that the appellant's February 12, 2007 written response to the proposal notice had been received, noting that she did not make an oral reply. *Id.* at Subtab 4c. The appellant was informed that the deciding official had considered the statements from her treating health care providers, and that those statements indicated she had a medical condition that prevented her from performing the duties of her position. *Id.* She was further informed that her medical statements made it clear that there was no reasonable likelihood she would be able to perform her duties in the foreseeable future. *Id.*

---

[3] In a June 13, 2006 appellant email, enclosed with her written February 12, 2007 response, the appellant asks, evidently referring to her supervisor, if "anything can be done to get this jerk off my back?" AF, Tab 9, Subtab 4e, at 32.

The decision letter noted that the Office of Competitive Sourcing, where the appellant was assigned, consisted of three employees, and that each year that office had to prepare a number of official reports based on statutory requirements, with deadlines, for transmission to the Office of Management and Budget. *Id.* In addition, that office was responsible for overseeing programs associated with the President's Management Agenda, which affects every agency function. *Id.* The appellant's absence meant that her work had to be performed by others in the office, and that this had adversely affected the office's ability to carry out its mission in a timely manner. *Id.*

The appellant was informed that the deciding official had reviewed her allegations of harassment, but he found them to be without merit. *Id.* She was further informed that her supervisor's actions in giving her direction as to the work that needed to be accomplished, the means to accomplish that work, and appropriate conduct in the office, including the use of leave, was reasonable and appropriate. *Id.* Her request for reassignment was not approved based, in part, on the fact her office had a substantial workload that required her presence in the office to accomplish her assignments. *Id.* A temporary reassignment, as the appellant had requested, would not have been in the interest of agency because her office required her presence and work to complete its mission. *Id.* Moreover, it would not have been able to fill her position while she was absent. *Id.*

The deciding official specifically noted that the appellant was not able to identify, and he was not aware of, any permanent position to which she could be reassigned. *Id.* She was reminded that she had been advised she was not entitled to a reassignment under the Rehabilitation Act because the inability to work for a particular supervisor is not a "disability" under the Act, and she was referred to 29 C.F.R. § 1630.2(j)(3)(i), which states that the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. *Id.*

The appellant was informed that, based on the deciding official's review of the record, he had determined that the charge that the appellant was unable to perform the duties of her position was fully supported by the evidence and was, therefore, sustained. *Id.* After reviewing the Douglas factors the deciding official further concluded that those factors provided no basis for changing the proposed decision, and that he had decided to remove her from Federal service to promote the efficiency of the service. *Id.* The effective date of her ordered removal was March 2, 2007, and she was informed that her removal did not affect her entitlement to apply for worker's compensation or retirement benefits. *Id.*

The hearing

At the hearing the agency presented testimonial evidence from witnesses Sullivan and Malone to support its documentary record.

**James Sullivan testimony**

The witness testified that he was the appellant's supervisor and the proposing official. Hearing Tape 1. He stated he has held his current position for five years, has been a team leader or supervisor for approximately 20 years, had prior experience in evaluating the performance of others, and had never been called as a witness. *Id.*

Mr. Sullivan stated that the appellant's removal was proposed because she was unable to perform the duties of her position. *Id.* He noted that the medical evidence she provided indicated he was a stressor in her life, and that this prevented her from returning to her position. *Id.* He stated he had denied her request for reassignment, and he referenced an August 1, 2006 memorandum he sent the appellant in response to her request for accommodation. *Id.*; AF, Tab 9, Subtab 4l. In it, he informed her that the agency had determined she had not established that she had a disability affecting a major life activity. *Id.* at Subtab 4l.

In order to show she had a disability the appellant had to establish she suffered from a physical or mental impairment that substantially limited one or more of her major life activities. As she was informed by Mr. Sullivan's memorandum, 29 C.F.R. § 1630(j)(3)(i) defines, in regard to the major life activity of working, that the term "substantially limits" means being significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. AF, Tab 9, Subtab 41. The inability to perform a single, particular job, the controlling regulation states, does not constitute a substantial limitation in the major life activity of working. *Id.*

Mr. Sullivan stated that he had given the appellant administrative leave to secure another position, but all that she found was the opportunity for a detail, not a reassignment. Hearing Tape 1. While he denied her request for a reassignment, he stated that he was never aware of, and she did not identify, a vacant position within the agency to which she could be reassigned. *Id.* He specifically noted that the third employee in the office, Susan Burtner, had also requested a detail, which he had denied. *Id.*

The witness stated that the appellant's EEO activity had no bearing on his proposal to remove her. *Id.* He said he had no personal contact with the appellant's medical providers, relying on their written submissions, and that they made no effort to contact him. *Id.*

The witness incorporated into his testimony his written statement from the record addressing the appellant's workers' compensation claim. Hearing Tape 1; AF, Tab 9, Subtab 4q. In it, he stated that her claim of suffering an injury on July 3, 2006, when her absence from the workplace commenced, resulted from her having been directed to remove an obscenity from her meeting summary notes and being asked to set up a meeting with her second level supervisor. AF, Tab 9, Subtab 4q.

The statement continued, noting that in response to her complaints he had participated in two mediation sessions with her, and had a desk audit performed to ensure she was being given grade-appropriate work. *Id.* He noted his other employee, Sue Burtner, had filed a grievance against the appellant on June 22, 2006, asking to be excused from any interrelated work projects with her, stating that the appellant was a very angry, belligerent and attacking individual. *Id.* It was also noted that, while he issued a January 26, 2006 directive to her requiring that she account for her time and use of leave, two other supervisors, besides himself, had earlier cautioned her on her use of leave. *Id.* In addition, her claim that she had received two superior annual performance ratings in the past two years was not correct, i.e., she had not. *Id.*

**Martin Melone testimony**

The witness, the deciding official, testified that he has held his current position as Director of Strategic Planning and Performance Management for three years, had been a manager for seven years, was the appellant's second-level supervisor, and had never before been called to testify as a witness. Hearing Tape 1. In reaching his decision to remove the appellant, he stated that the medical documents she provided indicated she could not do her job and that she was unable to return to her work place. *Id.* Moreover, at the time he made his decision she had been absent from the work place in excess of seven months. *Id.* He stated that she was not disabled, that she was not regarded as being disabled, and that her EEO activity had no bearing on his decision to remove her. *Id.*

The witness testified that he had observed the appellant working during the January through May 2006 time period. *Id.* Her performance, while sometimes good, was also erratic. *Id.* Administering to her and her problems during this period took 60 to 90 minutes of her supervisor's time each day, and a lot of his time as well. *Id.*

He agreed with Mr. Sullivan that the appellant's request for a detail could not be approved because of a staff shortage. *Id.* While he would have agreed to a

reassignment for her, that would have allowed him to replace her with another permanent employee, there was never an opportunity for such action. *Id.* There was never another job available to which she could be reassigned. *Id.*

The witness testified that he considered the appellant's conduct prior to July 3, 2006, on occasion, to be improper. *Id.* She created tension for others by her accusatory manner as reflected in her email messages. *Id.* He acknowledged that, while her supervisor Mr. Sullivan was not perfect, his actions in her case were certainly not inappropriate, noting that he had no complaints from others about Mr. Sullivan. *Id.* In comparison, the witness stated that he had complaints about the appellant, e.g., her loud conversations in public work spaces concerning her personal affairs. *Id.* He also noted that Ms. Burtner, a coworker, had filed a grievance against the appellant. *Id.*

The record contains a written submission from the appellant that includes a copy of an email from Mr. Sullivan, responding to an earlier appellant email in which she stated that the witness, Mr. Malone, had agreed that she should be provided with a "copy of the list of accusations," that had been made against her. *Id.* AF, Tab 9, Subtab 4e at 53. In his email, Mr. Sullivan lists two incidents of belligerent behavior towards other employees; being late for training and eating during the training session; not paying attention and being able to complete assignments after the training; being absent from the office for hours without any indication of where she might be; refusing to attend meetings; being habitually late; doing cross word puzzles during staff meetings; and, making lengthy personal calls that disrupted the staff. *Id.*

**Appellant testimony**

The appellant testified that her medical documents stated she could not function in her position at the agency. Hearing Tape 1. She said that while she had not been employed since she left the agency, she had done volunteer work. *Id.* As to her request for reassignment, she stated that she did not recall speaking with anyone in particular about a permanent position, but did expect that the

agency would find something for her. *Id.* She acknowledged her efforts had located a detail, but not a permanent reassignment, and that another opportunity at the Internal Revenue Service required that her FTE (her position) at the agency be transferred with her. *Id.* She said that she had not spoken directly with her supervisor about any of these positions. *Id.*

The appellant incorporated her February 12, 2007 response to the agency's proposal to remove her, discussed above, into her sworn testimony. *Id.*; AF, Tab 9, Subtab 4e. She stated that she had applied for disability benefits from the Social Security Administration (SSA) in March 2007, and had asked for reconsideration of a denial of her workers' compensation claim. Hearing Tape 1.

The witness stated that when she came to work for Mr. Sullivan she had to learn competitive sourcing, although her position eventually was limited exclusively to writing reports for the Office of Management and Budget. *Id.* Her trouble with Mr. Sullivan began with his issuance of a January 26, 2006 directive requiring her to account for her time and attendance. *Id.* In effect, she stated, she was issued a leave requirements letter. *Id.*

On February 24, 2006, the appellant stated her superior performance rating from an earlier supervisor was downgraded by Mr. Sullivan. *Id.* In response to her request to be promoted, she was given a desk audit, and was issued a new performance plan that contained conduct elements. *Id.* She said that during mediation he had stated he would approve a detail for her, and transfer of the FTE for her position, but that such action was not approved by Mr. Melone after the receiving organization stated it would not approve a reassignment, only a detail. *Id.*

On July 3, 2006, the appellant stated she had a panic attack at work in the afternoon, while trying to understand a assignment. *Id.* She said she went home early and was immobile the following day, at which time she checked with her therapist. *Id.* She said that life outside the office since then has been affected, and that she does not cook and has lost weight, has personal hygiene problems,

only does laundry at the last minute, and has not been sleeping or eating very well. *Id.* When she could not return to her office, she said she stopped going to work. *Id.*

On August 1, 2006, as detailed above, Mr. Sullivan denied her request for accommodation.[4] *Id.* She said that she can not work if she is micro-managed. *Id.* During this period she noted that she used, under the FMLA, three months of leave without pay. *Id.* When faced with removal, she decided to retire. *Id.* She said she has not been employed since because she can not complete employment applications. *Id.* She filed an EEO complaint in June 2006, which is awaiting a hearing. *Id.*

<u>Record documents</u>

Documents from the Board's record, not addressed above, include the appellant's Exhibit A, which is an SSA statement indicating she is entitled to monthly disability benefits beginning in January 2007. Appellant's Exhibit A. During the prehearing teleconference her representative was informed that the exhibit would be given little weight in the absence of a written SSA statement documenting the basis for its granting of the disability benefits. AF, Tab 17, 18. The appellant failed to provide such documentation, or any other evidence. Accordingly, I find the exhibit has little probative value in proving the claims at issue in this appeal.

The appellant filed, on July 19, 2007, after the Board's record closed on June 18, 2007, a copy of a July 6, 2007 Department of Labor letter indicating that the appellant filed a petition of reconsideration of an Office of Workers' Compensation Programs August 31, 2006 decision denying her benefits. AF,

---

[4] In her February 12, 2007 accommodation request, the appellant included an undated copy of an "appeal for immediate reassignment," which she evidently wrote in mid-June 2006. AF, Tab 9, Subtab 4d at 5. In it, she stated that the work she was being assigned then "takes up less than 5% of my work week. This has been true for at least the last 3 months, and off and on since January of 2006." *Id.*

Tab 19. Included with the letter are miscellaneous documents dated July 1, 2006, March 20, 2007, and May 11, 2007. *Id.* The parties were informed by the Board during the prehearing teleconference that the Board's record would close when the hearing concluded, on June 18, 2007. *Id.* at Tab 18. The appellant made no effort to show why the record should be reopened to accept her July 19, 2007 submission, especially for documents that predate the closing of the Board's record and do not, on their face, appear to be new and material evidence that was not, with diligence, discoverable prior to the record's closure. Accordingly, the appellant's July 19, 2007 filing is rejected.

Conclusion

I find that agency has established by preponderant evidence, i.e., the testimony of the appellant's first and second level supervisors and supporting record documentation, the merits of its charge that the appellant was unable to perform the duties of her position. It is unchallenged that the appellant departed the work place on July 3, 2006, and never returned at any time before the decision was made to remove her, effective March 2, 2007. Moreover, the medical documents she filed with the agency in response to its requests that she return to the work place indicate that at the time she was ordered removed she was unable to perform her duties as a GS-13 Management Analyst in the Office of Competitive Sourcing. In sum, I find the agency's charge sustained.

The appellant's affirmative defenses:

An appellant who raises a claim of disability discrimination may establish that she is disabled by showing that she has a physical or mental impairment that substantially limits a major life activity, that she has a record of such an impairment, or that she is regarded as having such an impairment. 29 C.F.R. § 1614.203(a)(1). The term "major life activity" means "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1614.203(a)(3). This list is not

exhaustive. For example, other major life activities may include, but are not limited to, sitting, standing, lifting, and reaching. Appendix to 29 C.F.R. Part 1630, discussing 29 C.F.R. § 1630.2(i).

The term "substantially limits" describes a person who is unable to perform a major life activity that the average person in the general population can perform, or is significantly restricted as to the condition, manner, or duration under which she can perform a particular major life activity as compared with the condition, manner, or duration under which the average person in the general population can perform the same major life activity. 29 C.F.R. § 1630.2(j)(1); *see also Medina v. Reno*, EEOC No. 01954883 (Dec. 5, 1997); *Walsh v. U.S. Postal Service*, 74 M.S.P.R. 627, 633 (1997) (the Rehabilitation Act was amended to incorporate the standards applied under Title I of the Americans with Disabilities Act). Three factors are considered in determining whether a person's impairment substantially limits a major life activity: Its nature and severity; how long it will last or is expected to last; and, its permanent or long term impact, or expected impact. *See Bond v. Department of Energy*, 82 M.S.P.R. ¶ 14 (1999).

The extent to which an impairment limits an employee's major life activities should be assessed without regard to the availability of mitigation measures. *Id.* at ¶ 15. Specifically, individuals with impairments that substantially limit major life activities are individuals with disabilities, even if medication controls the effects of the impairment; however, both the effect of the condition and the effect of the medication taken for the condition may be considered in determining whether an employee is disabled. *Id.*

In determining whether an employee is substantially limited in a major life activity, the major life activity of working should be examined last, and only in the event that the employee is not substantially limited with respect to any other major life activity. *See Clark v. U.S. Postal Service*, 74 M.S.P.R. 552, 559 (1997). If the appellant is substantially limited in any other major life activity, no determination need be made regarding whether she is substantially limited in

working. 29 C.F.R. § 1614.203(a)(3); *see also Clark*, 74 M.S.P.R. at 559. And even if the question of working is reached, the fact that an impairment prevents an employee from meeting the demands of a particular job does not necessarily mean that she is disabled; the impairment must foreclose generally the type of employment involved, and constitute for the particular person a significant barrier to employment. *See Miller v. United States Postal Service*, 43 M.S.P.R. 473, 477-78 (1990); *see also Forrisi v. Bowen*, 794 F.2d 931, 934-35 (4th Cir. 1986).

To meet her burden of proof with respect to establishing a prima facie case of disability discrimination where the appellant cannot perform her job without some form of reasonable accommodation, she must show that she is a disabled person, that the action appealed was based on her disability, and, to the extent possible, she must articulate a reasonable accommodation under which she believes she could perform the essential functions of her position or of a vacant position to which she could be reassigned. *See Clark,* 74 M.S.P.R. at 560.

I note that an agency's obligation to provide reasonable accommodation for an employee arises only when she establishes her status as a qualified disabled employee, and the agency may be allowed a period of time to conduct assessments and arrive at its conclusion as to whether she suffers from a disabling condition requiring accommodation. *See McConnell v. Department of the Army*, 61 M.S.P.R. 163, 169 (1994). In addition, even if an agency fails to meet its accommodation obligation providing for reassignment before it removes an employee, the agency's failure at that time to look for a position as a reasonable accommodation does not relieve the appellant of her burden of ultimately showing, before the Board, that such positions existed and were available. *See Jackson v. U.S. Postal Service*, 79 M.S.P.R. 46, 54 (1998).

Because the appellant stated that she would prove her claim under the theory of failure to provide reasonable accommodation, she was informed of what was required to establish a prima facie case of disability discrimination. AF, Tabs 13, 18. She had to show: (a) that she is a disabled person as defined by

29 C.F.R. § 1630.2(g) and that the action appealed to the Board was based upon her disability; and (b) that she is a qualified disabled person, that is, that she can perform the essential functions of a job with or without reasonable accommodation. AF, Tabs 13, 18.

The appellant was ordered to identify: (a) her medical condition; (b) whether the agency knew about the condition prior to the action appealed; (c) whether she was asserting that she meets the definition of disabled person under section 1630.2(g)(1), (2) or (3); (d) whether she was claiming that she could perform the duties of a position with accommodation or without accommodation; and (e) if she was claiming that she could perform with accommodation, the reasonable accommodation which she believed would enable her to perform the essential duties of a certain position, to include a vacant position to which she could be reassigned. AF, Tab 13.

The appellant's response, contained in her prehearing submission, stated that she "suffers from a psychiatric disorder, adjustment disorder with mixed disturbance of emotions and conduct (DSM IV code 309.4).[5] AF, Tab 17. She further contended that the agency knew of her condition, and that she was asserting that she meets the definition of disabled person under section 1630.2(g)(1). AF, Tab 17. She stated that she could perform the duties of a position with accommodation, as stated in her accommodation request to the agency. *Id.*

Turning first to the question of whether the appellant is disabled, as noted above this can be established by her showing she has a physical or mental impairment that substantially limits a major life activity, that she has a record of such an impairment, or that she is regarded as having such an impairment. 29

---

[5] While Mr. Honnold identified this code as applicable to appellant, Dr. Band stated his diagnosis was that of adjustment disorder with mixed anxiety and depressed mood (DSM IV 309.28). AF, Tab 9, Subtab 4g.

C.F.R. § 1614.203(a)(1). As also noted above, by the agency, 29 C.F.R. § 1630(j)(3)(i) defines, in regard to the major life activity of working, that the term "substantially limits" means being significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. AF, Tab 9, Subtab 4l.

In this case, the appellant's medical documentation, which appears to be based in large part on statements she made to her medical providers, without any meaningful input being sought from agency officials, repeatedly states that while she can perform productively in other positions, she is disabled from working in the GS-13 Management Analyst position to which she was assigned. AF, Tab 9, Subtab 4i. Dr. Band stated that as long as she was assigned to her "current job" her condition would continue, but "otherwise she should be able to return to work." *Id.* Her current position was described as a "stressor at work," and that reasonable accommodation would be a "shift of stressor," which would enable her to once again be productive. *Id.* He further stated that "she cannot perform the duties of [her] position that has been the sole stressor of her current condition." *Id.*

The appellant's therapist, Mr. Honnold, similarly referred to the appellant's medical condition noting that it prevented her "from resuming her regular functions" in her assigned position, and that he "strongly advised her on mental health grounds against reporting for duty in [her] office." AF, Tab 9, Subtab 4g. He urged the agency, however, to make alternative employment options available to her. *Id.* He noted that, although her condition "seems to be intimately connected with her ongoing work situation, which continues to perpetuate her illness," a change in her working environment "would be indicated so she could return to her productivity." *Id.*

Simply stated, I find that the appellant failed to establish she is a disabled person as defined by 29 C.F.R. § 16302(g). She failed to show, as she claimed,

that she had a physical or mental impairment that substantially limits the major life activity of working. She is not significantly restricted in her ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. Her inability to perform the single position of GS-13 Management Analyst in the agency's Office of Competitive Sourcing does not constitute a substantial limitation in the major life activity of working. The evidence reflects that her medical condition was situational, being limited in this case to the position from which she was ordered removed.

Even if the appellant here was able to show that she is disabled and the agency based its removal action on her disability, thus presenting direct evidence of discrimination, she has not shown that she is a qualified disabled person, i.e., a disabled individual who can perform the essential functions of her position, or a vacant position, with or without reasonable accommodation, without endangering the health and safety of herself or others. The appellant did not articulate a reasonable accommodation, and her continuous absence and refusal to return to work prevented any additional efforts on the part of the agency to accommodate her. *See McFadden v. Department of Defense*, 85 M.S.P.R. 18, 25, ¶ 20 (1999) (when an appellant cannot show that she can perform the essential duties of her position with or without accommodation, the Rehabilitation Act does not require the agency to accommodate her medical condition).

I have not reviewed the appellant's claim of harmful procedural error, which was based on her contention that the agency failed to comply with 29 C.F.R. § 1630.2(o)(ii), defining reasonable accommodation. In the absence of a duty--or the ability given that there were no vacant positions to which she could be reassigned--to accommodate the appellant by reassignment, I find that agency was not required to engage in any greater degree of effort than it did in attempting to address her medical condition. In that regard, I would note that contrary to her claim of harassment, it appears from the evidence of record that

she was subjected to no greater scrutiny than might be expected in the case of an employee who was experiencing both conduct and performance problems.

As to the appellant's claim of retaliation for prior EEO activity, she was informed that to establish a prima facie case she had to show that: (a) she engaged in a protected activity; (b) the accused official knew of the protected activity; (c) the adverse employment action under review could, under the circumstances, have been retaliation; and (d) there was a genuine nexus between the retaliation and the adverse employment action. AF, Tab 13. To establish a genuine nexus between the protected activity and the adverse employment action, the appellant had to show the employment action was taken because of her protected activity. *Id.* She was ordered to describe: (a) the EEO activity, her manner of involvement, and the date this occurred; (b) the names of the alleged discriminatory officials; (c) whether the proposing or deciding officials knew of the protected activity; and (d) the causal connection between the protected activity and the ordered removal. AF, Tabs 13, 19.

The parties stipulated to the fact that at the time of her proposed removal the proposing and deciding officials were aware of the appellant's prior EEO activity. AF, Tab 16, Hearing Tape 1. They also stipulated that both officials were interviewed or contacted by an EEO counselor, as early as March 8, 2006, in the case of Mr. Martin, and March 20, 2006, in the case of Mr. Sullivan. *Id.*

Both officials testified that the appellant's prior EEO activity played no part in their respective decisions to propose and, later, order her removal based on the fact she was unable to perform the duties of her position. Hearing Tape 1. The appellant stated that she could not, and would not, return to her GS-13 Management Analyst position because of her medical condition. She failed to establish that there was a genuine nexus between any motive to retaliate and her removal, i.e., she did not show that her removal was ordered because of her protected activity. The testimonial and documentary evidence of record

establishes that the agency had a reasonable basis for the action that it took in this case.

In sum, I find that the appellant did not establish her affirmative defenses. She failed to show that she was the victim of discrimination based on disability, that the agency committed harmful procedural error, or that she was retaliated against for prior EEO activity.

Nexus and the efficiency of the service

An agency may take an action against an employee only for such cause as will promote the efficiency of the service. *See Fontes v. Department of Transportation*, 51 M.S.P.R. 655, 665 (1991). An adverse action promotes the efficiency of the service when the basis for the action either relates to the employee's ability to accomplish her duties satisfactorily or to some other legitimate government interest. *See Hatfield v. Department of the Interior*, 28 M.S.P.R. 673, 675 (1985).

Under the circumstances of this case I find that the agency had no duty to retain the appellant once it established that she was unable to perform the duties of her position and it had no other available positions for which she was qualified to which it could assign her. As such, I further find that its removal action promoted the efficiency of the service. *See D'Leo v. Department of the Navy*, 53 M.S.P.R. 44, 51 (1992) (removal for physical inability to perform the duties of an employee's position promotes the efficiency of the service); *Schoening v. Department of Transportation*, 34 M.S.P.R. 556, 561 (1987).

Appropriateness of the penalty

Turning to the question of the appropriateness of the penalty imposed in this case, I note that the purpose of the Board's review of a penalty is to ensure that the agency considered relevant factors and assessed a penalty that is within the limits of reasonableness. The Board does not substitute its judgment for that

of the agency and determine what might have been the best penalty in a given case. *See Douglas*, 5 M.S.P.R. at 306.

The Board has held that, where an employee can not perform the essential functions of her position, with or without reasonable accommodation, and the agency has no vacant positions to which it can assign her, her removal for physical inability to perform is appropriate. *See Trammell v. Department of Veterans Affairs*, 60 M.S.P.R. 79, 90 (1993); *D'Leo*, 53 M.S.P.R. at 51.

The appellant here has failed to show that she could perform the essential functions of her position and there is no evidence of record that establishes that the agency had any vacant positions to which she could be assigned. Accordingly, I find that her removal does not exceed the bounds of reasonableness. *See Raphel v. Department of the Army*, 54 M.S.P.R. 596, 605 (1992), *aff'd*, 29 F.3d 644 (Fed. Cir. 1994) (Table) (the proper means for effecting an involuntary separation because of an employee's mental or physical inability to perform her duties is by termination, for that reason, under the authority of 5 U.S.C. Chapter 75).

## DECISION

The agency's action is AFFIRMED.

FOR THE BOARD:

/S/
Edward F. Manning
Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on **November 8, 2007**, unless a petition for review is filed by that date or the Board reopens the case on its own motion. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may

file a petition for review within 30 days after the date you actually receive the initial decision. You must establish the date on which you received it. The date on which the initial decision becomes final also controls when you can file a petition for review with the Equal Employment Opportunity Commission (EEOC) or with a federal court. The paragraphs that follow tell you how and when to file with the Board, the EEOC, or the federal courts. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

**BOARD REVIEW**

You may request Board review of this initial decision by filing a petition for review. Your petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file your petition with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.,
Washington, DC 20419

A petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition for review submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

If you file a petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. Your petition must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you more than 5 days after the date of issuance, 30 days after the date you actually receive the initial decision. If you claim that you received this decision more than 5 days after its issuance, you have the

burden to prove to the Board the date of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (5 C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by fax or e-mail is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. If the petition is filed by e-mail, and the other party has elected e-Filing, including the party in the address portion of the e-mail constitutes a certificate of service.

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION REVIEW

If you disagree with the Board's final decision on discrimination, you may obtain further administrative review by filing a petition with the EEOC no later than 30 calendar days after the date this initial decision becomes final. The address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 19848
Washington, D.C. 20036

## JUDICIAL REVIEW

If you do not want to file a petition with the EEOC, you may ask for judicial review of both discrimination and nondiscrimination issues by filing a civil action. If you are asserting a claim under the Civil Rights Act or under the Rehabilitation Act, you must file your appeal with the appropriate United States district court as provided in 42 U.S.C. § 2000e-5. If you file a civil action with the court, you must name the head of the agency as the defendant. 42 U.S.C. § 2000e-16(c). To be timely, your civil action under the Civil Rights Act, 42 U.S.C. § 2000e-16(c) must be filed no later than 30 calendar days after the

date this initial decision becomes final. If you are asserting a claim under the Age Discrimination in Employment Act, your claim must be filed with the appropriate United States district court as provided in 29 U.S.C. § 633a(c). In some, but not all districts you may have up to 6 years to file such a civil action. 28 U.S.C. § 2401(a).

If you choose not to contest the Board's decision on discrimination, you may ask for judicial review of the nondiscrimination issues by filing a petition with:

The United States Court of Appeals
for the Federal Circuit
717 Madison Place, NW.
Washington, DC 20439

You may not file your petition with the court before this decision becomes final. To be timely, your petition must be received by the court no later than 60 calendar days after the date this initial decision becomes final.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703). You may read this law, as well as review the Board's regulations and other related material, at our website, http://www.mspb.gov. Additional information is available at the court's website, http://fedcir.gov/contents.html. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

Appellant

U.S. Mail

Margaret E. Rand
1320 21st Street, NW
Apt # 407
Washington, DC 20036-1557

Appellant Representative

Electronic Mail

Joel P. Bennett, Esq.
1208 Eton Court, NW
Washington, DC 20007

Agency Representative

Facsimile

Mr. Mark K. Hingston
Department of the Treasury
Office of the General Counsel
1500 Pennsylvania Ave., N.W., Room 2213
Washington, DC 20220

October 4, 2007
(Date)

Talethia Owens
Legal Assistant

# EXHIBIT E



DEPARTMENT OF THE TREASURY
WASHINGTON, D.C. 20220

August 10, 2006

MEMORANDUM FOR ELAINE RAND

FROM: Gloria Booze *Gloria Booze*
EEO Officer
Departmental Offices

SUBJECT: ***Response to Emails Regarding Reasonable Accommodation***

This responds to your e-mail request and allegations regarding your request for Reasonable Accommodation. In your e-mail of Wednesday, July 26, 2006 at 6:18pm and a six-page attachment, you allege the reasonable accommodation process was not followed, and you were not provided appropriate information.

I will not respond to every assertion in your email. I do want to take the opportunity to respond to the main points you raised. You first allege that the reasonable accommodation process was not followed, claiming that you had no guidelines or advice about "disability" and therefore your doctor did not address "disability." However, in an e-mail dated June 21, 2006, the Director, Office of Equal Opportunity and Diversity provided you with the definition of reasonable accommodation in response to your inquiry. You were informed:

> The discrimination statutes provide for two types of reasonable accommodation: reasonable accommodation for employees who are disabled, to allow them the same access and ability to work as non-disabled employees, and reasonable accommodation for an employee's bona fide religious beliefs. Below is the definition relating to disabilities:
>
> Reasonable accommodation is any change or adjustment to a job work environment that permits a qualified applicant or employee with a disability to participate in the job application process, to perform the essential functions of a job, or to enjoy benefits and privileges of employment equal to those enjoyed by employees without disabilities.

To assert now that you were not aware that "disability" was an issue is not accurate or credible.

You then indicated the "Deciding Official" was not appropriate. The deciding official is your supervisor, Jim Sullivan. However, I reviewed the medical documentation you submitted and determined, in consultation with the Office of General Counsel, that the information submitted does not support the conclusion that you are an individual with a disability. As explained in the decision letter, since you are not an individual with a disability, the agency is not obligated to provide you with a reasonable accommodation in the form of reassignment or otherwise.

Reviewing this information and advising management on your request is a part of my role as the EEO Officer, and does not constitute a conflict of interest because you have other on-going EEO complaints.

As discussed in Mr. Sullivan's memorandum to you, you can request reconsideration of the decision. You can provide additional information you would like the agency to consider. If you believe the decision, upon reconsideration, is incorrect, you can appeal the decision to the Deputy Assistant Secretary for Human Resources. Also, you may file an EEO complaint if you feel you have been denied a reasonable accommodation on the basis of a disability. If you want to file an EEO complaint, you must request an EEO counselor within 45 days from the date you were informed of the denial.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MARGARET ELAINE RAND**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HENRY K. PAULSON,**<br>**Secretary of the Treasury,**<br><br>**Defendant.** | **Civil Action No.: 08-703 (PLF)** |

**[PROPOSED] ORDER**

This matter having come before the Court on defendant's motion for partial dismissal of the complaint, or alternatively, for partial summary judgment, plaintiff's opposition to the motion, if any, and defendant's reply, and it appearing that the grant of the motion would be in the interests of justice, it is hereby

**ORDERED** that defendant's motion for partial dismissal, or alternatively partial summary judgment is hereby **GRANTED**. And it is further

**ORDERED** that plaintiff's claims pursuant to the Rehabilitation Act are hereby dismissed with prejudice.

**SO ORDERED** on this ____ day of ___________________, 200___.

PAUL L. FRIEDMAN
U.S. DISTRICT JUDGE