## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**MARGARET ELAINE RAND**

**Civil Action no. 08-703-PLF**

    **Plaintiff,**

    **v.**

**SECRETARY OF THE TREASURY**

    **Defendant.**

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OR PARTIAL SUMMARY JUDGMENT

Plaintiff hereby opposes defendant's motion because she did not fail to exhaust her administrative remedies for her Rehabilitation Act claim and she has not failed to state a claim. Moreover, summary judgment is inappropriate because there are genuine issues of material fact.

### FACTUAL BACKGROUND

This suit involves a career federal employee who was harassed and micro-managed by her supervisors and presented competent medical and other evidence that she could function as an employee of the defendant agency if she were accommodated by being transferred to another position where she would not be harassed or micro-managed. Attached hereto are the declaration of plaintiff (exhibit 1), plaintiff's response to the defendant's statement of material facts not at issue (exhibit 2) and plaintiff's statement of material facts at issue (exhibit 3). In addition, plaintiff attaches the documents she submitted to the agency from her medical providers in support of her request for reasonable accommodation, totaling 18 pages (exhibits 4a-4k).

### STANDARD OF REVIEW

Defendant's burden on a motion to dismiss is a heavy one. Plaintiff's complaint is only required to be a short and plain statement of the claim showing that the pleader is entitled to

relief.  Federal Rule of Civil Procedure 8(a). See *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506,

513 (2002). Plaintiff's complaint meets the standards set forth above, and  those imposed by *Bell*

*Atlantic Corp. v. Twombly,* 127 S. Ct. 1955 (2007), since the facts alleged are enough to raise a

right to relief above the speculative level. Id. at 1965. In deciding this motion brought pursuant

to Federal Rule of Civil Procedure 12(b)(6), the court "may only consider the facts alleged in the

complaint, documents attached as exhibits or incorporated by reference in the complaint, and

matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao,* 226 F. Supp.

2d 196 (D.D.C. 2002). If the court considers matters outside the pleadings, the motion should be

considered as one for summary judgment and disposed of pursuant to Federal Rule of Civil

Procedure 56. *Holy Land Found. for Relief & Dev. v. Ashcroft,* 333 F. 3d 156, 165 (D.C. Cir.

2003).

On summary judgment, it is defendant's burden to prove that there are no genuine issues

of material fact and he is entitled to judgment as a matter of law. Federal Rule of Civil Procedure

56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). When a motion for summary

judgment is under consideration, "the evidence of the non-movant is to be believed, and all

justifiable inferences are to be drawn in [her] favor." Id. at 255. On a motion for summary

judgment, the court may not make credibility determinations or weigh the evidence. *Czekalski v.*

*Peters,* 475 F. 3d 360, 363 (D.C. Cir. 2007). If the non-moving party provides evidence that

would permit a reasonable jury to find in her favor, summary judgment should be denied.

*Lathram v. Snow,* 336 F. 3d 1085, 1088 (D.C. Cir. 2003); *Laningham v. U.S. Navy,* 813 F. 2d

1236, 1242 (D.C. Cir. 1987). Plaintiff's testimony alone can withstand a motion for summary

judgment. *Arrington v. United States,* 473 F. 3d 329, 337 (D.C. Cir. 2006); *George v. Leavitt,* 407 F.3d 405, 414 (D.C. Cir. 2005); *Greene v. Dalton,* 164 F. 3d 671, 674-75 (D.C. Cir. 1999).

The evidence before this Court demonstrates that plaintiff has exhausted her administrative remedies under the Rehabilitation Act and that there are genuine issues of material fact precluding summary judgment on her Rehabilitation Act claim. See exhibits 1-4k hereto.

## ARGUMENT

Plaintiff's claims under the Rehabilitation Act should not be dismissed for failure to exhaust administrative remedies because plaintiff has done so. In addition, defendant's motion for summary judgment should be denied because there are genuine issues of material fact as to whether plaintiff is a qualified individual with a disability. See generally, *Desmond v. Mukasey,* 2008 WL 2583022 (D.C. Cir. July 1, 2008).

## I. PLAINTIFF HAS EXHAUSTED HER ADMINISTRATIVE REMEDIES CONCERNING HER FAILURE TO ACCOMMODATE CLAIM

Plaintiff's complaint herein includes failure to accommodate as part of her Rehabilitation Act claim, not a separate and distinct claim. See complaint herein at ¶5. However, that is part of her removal claim, for which plaintiff has exhausted all administrative claims, since she filed a timely mixed case complaint, alleging violation of the Rehabilitation Act, including failure to accommodate her disability, with the Merit Systems Protection Board after receiving the decision on her removal.  **See** declaration of plaintiff, exhibit 1 hereto at ¶4. *See also* 29 C.F.R. §1614.302(b). She was not required to see an EEO counselor since she was the victim of an adverse action, removal, appealable to the Merit Systems Protection Board. *Id.* Therefore, since

the failure to accommodate claim is part of plaintiff's claim concerning her removal, she has not failed to exhaust administrative remedies.

Whether an accommodation is reasonable is a question of fact for the jury. *Fjellestad v. Pizza Hut of Am., Inc.,* 188 F. 3d 944 (8th Cir. 1999); *Jankowski Lee & Assoc. v. Cisneros,* 91 F. 3d 891, 896 (7th Cir. 1996). Refusal to accommodate is tied to the removal action and part of plaintiff's argument that her termination was in violation of the Rehabilitation Act. *See Chinchillo v. Powell,* 236 F. Supp. 2d 18, 23 (D.D.C. 2003).

## II. PLAINTIFF IS A QUALIFIED INDIVIDUAL WITH A DISABILITY UNDER THE REHABILITATION ACT

The Rehabilitation Act bars federal agencies from discriminating against employees with disabilities. *See* 29 U.S.C. §791(b); *Taylor v. Rice,* 451 F. 3d 898, 905 (D.C. Cir. 2006); 29 C.F.R. §1614.203. Disabilities under the Rehabilitation Act include mental and psychological disorders and emotional or mental illness. 29 C.F.R. §1614.203(a)(2). Plaintiff does not claim her "disability stems solely from her dissatisfaction working with one supervisor" as defendant argues on page 8 of his memorandum.  Rather, she claims her disability is the result of working in an environment where she was micro-managed and harassed. See exhibit 1 hereto at ¶2; exhibits 4a-k hereto.

## A. PLAINTIFF IS DISABLED WITHIN THE MEANING OF THE REHABILITATION ACT BECAUSE HER IMPAIRMENT HAS A PERMANENT OR LONG-TERM IMPACT

Major life activities under the Rehabilitation Act include working according to the Equal Employment Opportunity Commission. *See* 29 C.F.R. §1614.203(a)(3); 29 C.F.R. §1630.2(i).

*See also Gasser v. District of Columbia,* 442 F. 3d 758, 763 n.7 (D.C. Cir. 2006)(assuming without deciding that working constitutes a major life activity). The Equal Employment Opportunity Commission regulation requires that the "Federal Government shall become a model employer of individuals with handicaps." 29 C.F.R. §1614.203(b). *See also Woodman v. Runyon,* 132 F. 3d 1330, 1343 (10th Cir. 1997)(Rehabilitation Act imposes greater duty than the Americans with Disabilities Act on federal employers).

Plaintiff's impairment has a long term impact as demonstrated by the fact that she declared disabled by the Social Security Administration and plaintiff is still suffering from the effects of being micro-managed and harassed at the agency. See exhibit 1 hereto at ¶5; exhibits 4a-k hereto.

The defendant had an obligation to make reasonable accommodation including transferring plaintiff to another position. See *Barth v. Gelb,* 2 F. 3d 1180, 1183 (D.C. Cir. 1993); 29 C.F.R. §1614.203(c) and (g). At one time the agency agreed to do so but then it reneged. See exhibit 1 hereto at ¶3; exhibit 4a hereto. This violated the Rehabilitation Act and Americans with Disabilities Act standards. See 42 U.S.C. §12111(9)(B); 29 C.F.R. §1630.2(*o*). *See also* 45 C.F.R. §84, app. A at 350 (2003)(impairment need not be severe, permanent or progressive to be substantially limiting under the Rehabilitation Act).

## B. PLAINTIFF IS DISABLED WITHIN THE MEANING OF THE REHABILITATION ACT BECAUSE SHE IS SIGNIFICANTLY LIMITED IN THE MAJOR LIFE ACTIVITY OF WORKING

A plaintiff's personal testimony cannot be inadequate to raise a genuine issue regarding her own experience. *Haynes v. Williams,* 392 F. 3d 478, 482 (D.C. Cir. 2004). Her testimony,

exhibit 1 hereto, indicates she is significantly limited in the major life activity of working and her ability to manage basic household chores, personal hygiene and socializing. See exhibit 1 hereto at ¶5. See also exhibits 4a-k hereto, particularly exhibit 4e, July 28, 2006 letter from Edward Honnold to Gloria Booze. She is precluded from the substantial class or broad category of jobs where she would have to work full time in a high stress atmosphere. Id.

In her complaint at ¶5 plaintiff has also alleged retaliation for prior protected activity in her removal from government service. Her June 2006 request for reasonable accommodation clearly was prior protected activity under the Rehabilitation Act. See *Duncan v. WMATA,* 214 F.R.D. 43, 49-50. Therefore, summary judgment is inappropriate for this part of plaintiff's Rehabilitation Act claim.

## CONCLUSION

For the reasons set forth above, plaintiff submits defendant's motion should be denied.

_____/s/_____

Joel P. Bennett
D.C. Bar no. 145227
Law Offices of Joel P. Bennett, P.C.
1208 Eton Court, NW
Washington, DC 20007-3239
202-625-1970
202-625-1973-fax
jbennett@radix.net
Attorney for plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**MARGARET ELAINE RAND**

        **Plaintiff,**

    **v.**

**SECRETARY OF THE TREASURY**

        **Defendant.**

**Civil Action no. 08-703-PLF**

### DECLARATION OF PLAINTIFF

1. I am an adult citizen of the United States and competent to give this declaration, based upon my personal knowledge.

2. In 2006, I was being micro-managed and harassed by my supervisors at the above agency. Upon advice of the medical professionals treating me for acute anxiety, depression and panic attacks, I requested reassignment to a position where I would not be micro-managed or harassed. I submitted extensive documentation from the professionals treating me. I do not claim my disability stems solely from my dissatisfaction working with one supervisor. My disability is the result of working in an environment where I was micro-managed and harassed.

3. I tried hard to find a detail or reassignment but my supervisors refused to allow me to be detailed although they had previously agreed to do so. I filed a formal internal agency complaint in 2006, after timely contact with an EEO counselor. This complaint, agency no. DO-06-0189-F, includes denial of the detail in June 2006 and continuing harassment and discrimination and reprisal from February 2006 to June 2006. That complaint was heard by an Equal Employment Opportunity Commission Administrative Judge in June of 2008 and is pending a decision by the Administrative

EXHIBIT 1             Page 1 of 3

Judge.

4. I did not seek EEO counseling from the agency when my request for reasonable accommodation was initially denied on August 1, 2006 because the decision indicated reconsideration could be sought and I intended to do so. My supervisors and the HR official for reasonable accommodation requests failed to engage in an interactive process with me concerning reasonable accommodation. I filed a timely mixed complaint with the Merit Systems Protection Board after receiving the agency's decision to remove me from my position. This complaint included failure to make reasonable accommodation of my disability.

5. Shortly after I was terminated by the agency I applied for and was granted disability by the Social Security Administration. I am still suffering from being micro-managed and harassed by my former agency and still under treatment for the same mental and emotional conditions set forth in my requests for accommodation. I am still permanently impacted and disabled from the micro-management and harassment by my supervisors at my former agency. My medical and other professional health care providers have not given me any prediction when and if I will recover fully. I am and have been significantly limited in the major life activity of working since I cannot work full time or in any highly demanding or stressful job.

6. The agency gave me no advice nor any guidelines for submitting the reasonable accommodation request. My second reasonable accommodation request was accurate and quoted the EEO sources that the agency used for such determinations as Reasonable Accommodation Requests. The agency never responded to my second reasonable accommodation request, submitted on 2/12/07.

I hereby declare under penalty of perjury that the foregoing is true and correct.

EXHIBIT 1                    Page 2 of 3

/s/

Margaret Elaine Rand

      Dated: July 17, 2008

EXHIBIT 1                          Page 3 of  3

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARGARET ELAINE RAND

                                  **Civil Action no. 08-703-PLF**

    **Plaintiff,**

  **v.**


**SECRETARY OF THE TREASURY**

    **Defendant.**

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

1. Admitted but incomplete.  The agency gave Plaintiff no advice nor any guidelines for submitting the reasonable accommodation request, and this paragraph of defendant  does not describe plaintiff's situation accurately. Plaintiff's second reasonable accommodation request was  accurate, quoted the EEO sources that the agency used for such determinations as Reasonable Accommodation Requests. The agency  never responded to the second request. See declaration of plaintiff, exhibit 1 hereto, at ¶6.

2.      Admitted.

3.      Admitted, but only as far as it goes.  Plaintiff did submit a reconsideration request and it was never mentioned nor decided, and, significantly, is not mentioned anywhere in this list of "agreed upon material facts."

4.      Denied.  See response to #3, indicating that Plaintiff did indeed file a reconsideration that is not mentioned, and which she properly researched and  is thus complete and due serious consideration.


EXHIBIT 2

5.      Denied. She had already filed an EEO complaint about the harassment on June 21, 2006 and

Plaintiff was out on sick leave (7-5-06) when this denial was issued (8-1-06).   Seeing an

EEO counselor for this issue would have been redundant.

6.      Admitted

7.      Admitted, establishing that she had a disability affecting major life activities, a fact

Defendant denies in # 4 above.

8.      Admitted

9.      Admitted but see response to #5 above.

10.     Denied; see declaration of plaintiff; exhibit 1 to opposition to motion

11.     Admitted

        /s/

Joel P. Bennett
Law Offices of Joel P. Bennett, P.C.
1208 Eton Court, NW
Washington, DC 20007-3239
202-625-1970-voice
202-625-1973-fax
jbennett@radix.net
Attorney for Plaintiff

EXHIBIT 2                    Page 2 of  2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MARGARET ELAINE RAND

        Civil Action no. 08-703-PLF

    Plaintiff,

  v.

SECRETARY OF THE TREASURY

    Defendant.

**PLAINTIFF'S  STATEMENT OF MATERIAL FACTS AS TO WHICH THERE ARE GENUINE ISSUES**

1. Whether defendant failed to make reasonable accommodation of plaintiff's disability. See exhibit 1 at ¶s 2-3.

2. Whether plaintiff claims her disability stems solely from her dissatisfaction working with one supervisor or  is the result of working in an environment where she was micro-managed and harassed. See exhibit 1 at ¶2.

3. Whether defendant  failed to engage in an interactive process with plaintiff  concerning reasonable accommodation.  See exhibit 1 at ¶4.

4.  Whether plaintiff is still suffering from being micro-managed and harassed by her former agency and still under treatment for the same mental and emotional conditions set forth in her requests for accommodation. See exhibit 1 at ¶5.

5. Whether plaintiff is  still permanently impacted and disabled from the micro-management and harassment by her supervisors at her former agency. See exhibit 1 at ¶5.

6. Whether plaintiff's medical and other professional health care providers have  given her any prediction when and if she will recover fully. See exhibit 1 at ¶5.

EXHIBIT 3                         Page 1 of  2

**7.** Whether plaintiff is significantly limited in the major life activity of working since she cannot

work full time or in any highly demanding or stressful job.

/s/

Joel P. Bennett
Law Offices of Joel P. Bennett, P.C.
1208 Eton Court, NW
Washington, DC 20007-3239
202-625-1970-voice
202-625-1973-fax
jbennett@radix.net
Attorney for Plaintiff

EXHIBIT 3                    Page 2 of  2

## EDWARD HONNOLD, J.D., LICSW

TRANSITIONS COUNSELING

June 26, 2006

SUITE 503
1660 L STREET, N.W.
WASHINGTON, D.C. 20036
(202) ~~726-4169~~
244-2886

Ms. Gloria Booze
EEO Officer
U.S. Department of the Treasury
Washington, D.C.

Dear Ms. Booze:

This letter supports the immediate transfer or detail of Ms. Elaine Rand, an employee of the U.S. Department of the Treasury, as a reasonable accommodation to Ms. Rand's inability to function according to her customary high performance standards, under the conditions of extreme and apparently harsh supervisory scrutiny currently existing in the Office of Competitive Sourcing.

I am a Licensed Independent Clinical Social Worker (LICSW) in private practice in the District of Columbia since 1992. Since October 2003, I have counseled Ms. Rand in my practice on a range or personal and work-related issues. I have come to know Ms. Rand as a highly intelligent and resourceful professional with impeccable integrity.

Most recently, I have become aware that Ms. Rand has apparently been subject to a pattern of relentless and hostile administrative scrutiny involving exhaustive oversight of her attendance record and various elements of her job performance. Despite consistently high performance ratings, Ms. Rand has been subject to a pattern of harassing administrative interventions that have led her to suffer symptoms of extreme anxiety and feelings of professional insecurity and self-doubt, interfering with her capability to maintain her usual high performance standards. Despite repeated efforts by Ms. Rand to initiate mediation of these issues and to seek other counsel and recourse within the Department, the extreme supervisory scrutiny of Ms. Rand has persisted. Though I have worked with Ms. Rand to explore every possible constructive avenue to resolve these issues internally, there no longer appears to be a realistic prospect for satisfactory resolution of these issues within the Office of Competitive Sourcing.

Fortunately, there appears to be an opportunity for administrative transfer or detail of Ms. Rand to the Office of Financial Education in the Treasury Department's Office of Domestic Finance. Such a transfer or detail would appear to be a reasonable administrative accommodation to Ms. Rand's currently high degree of sensitivity to the supervisory conditions now prevailing in her current office. Therefore I strongly and respectfully encourage the Department to take all steps necessary in order to effectuate this transfer at the earliest possible opportunity.

With best regards,

Edward Honnold, J.D., LICSW


PLAINTIFF'S EXHIBIT
4a
RAM

LICENSED INDEPENDENT CLINICAL SOCIAL WORKER

RAYMOND I. BAND, M. D.
4545 42ND ST. N. W.
WASHINGTON, D. C. 20016
TELEPHONE 202 362-0377

1 July 2006
Re Rand, Elaine
Rx DSM IV 309.28

Ms Gloria C Booze
EEO Officer
Office of Deputy Asst Secretary
for Human Resources (CHCO)

Dear Ms Booze:

I have seen Ms Rand on occasion for Psychiatric and Psychopharmacological treatment. Her Diagnoses is Adjustment Disorder with mixed Anxiety and Depressed Mood. This usually occurs in response to an identifiable stressor. As indicated in the Diagnoses the symptoms are an outbreak of Anxiety and Depression which interfere with the persons social and occupational functioning.

Ms Rand has a history of superior performance for long periods of time. Recently she was doing well until a change in supervisors. This situation has become a stressor which has precipitated her current difficulty.

PLAINTIFF'S
EXHIBIT
4.b.
PENGAD-Bayonne, N.J.

2.

3

RAYMOND I. BAND, M. D.
4545 42ND ST. N. W.
WASHINGTON, D. C. 20016
—
TELEPHONE 202 362-0377

Re: Band, Eleanor

While medication has given her a modicum of relief a change in her situation is indicated. With relief of her stressor her prognosis is good as exemplified by her recent evaluations prior to her current situation. Hence a reasonable accomodation, i e shift of stressor would enable her to return to her previous productive work.

I hope the above is germane to your inquiry. If I can be of any further help please do not hesitate to request this through Ms Band.

Sincerely
Raymond I. Band m.

EDWARD HONNOLD, J.D., LICSW

TRANSITIONS COUNSELING

July 5, 2006

SUITE 503
1660 L STREET, N.W.
WASHINGTON, D.C. 20036
(202) 726-4169

Ms. Gloria Booze, EEO Officer
U.S. Department of the Treasury
Washington, D.C.

Dear Ms. Booze:

This letter supports the immediate transfer or detail of Ms. Elaine Rand, an employee of the U.S. Department of the Treasury, as a reasonable accommodation to Ms. Rand's inability to function according to her customary high performance standards, under the harsh supervisory conditions existing in the Office of Competitive Sourcing.

I am a Licensed Independent Clinical Social Worker (LICSW) in private practice in the District of Columbia since 1992. Since October 2003, I have counseled Ms. Rand in my practice on a range or personal and work-related issues. I have come to know Ms. Rand as a highly intelligent and resourceful professional with impeccable integrity.

Most recently, I have become aware that Ms. Rand has been subject to a pattern of relentless and hostile administrative scrutiny involving exhaustive oversight of her attendance record and various elements of her job performance. Despite consistently high performance ratings, Ms. Rand has apparently been subject to a pattern of harassing administrative interventions that have led her to suffer symptoms of extreme anxiety and feelings of professional insecurity and self-doubt, interfering with her capability to maintain her usual high performance standards. As a consequence of the external stressors in her relationship with her supervisor, Ms. Rand's clinical condition meets diagnostic criteria for an Adjustment Disorder with Mixed Disturbance of Emotions and Conduct (DSM IV Code 309.4). It is my professional opinion that Ms. Rand's prognosis is good, but only if she is removed from the daily trauma of this supervisory relationship.

Despite repeated efforts by Ms. Rand to initiate mediation of these issues and to seek other counsel and recourse within the Department, the extreme supervisory scrutiny of Ms. Rand has persisted. Though I have worked with Ms. Rand to explore every possible constructive avenue to resolve these issues internally, there no longer appears to be a realistic prospect for satisfactory resolution of these issues within the Office of Competitive Sourcing. Fortunately, there appears to be an opportunity for administrative transfer or detail of Ms. Rand to the Office of Financial Education in the Treasury Department's Office of Domestic Finance. Such a transfer or detail would appear to be a reasonable administrative accommodation to Ms. Rand's currently high degree of sensitivity to the supervisory conditions now prevailing in her current office. Therefore I strongly and respectfully encourage the Department to take all steps necessary in order to effectuate this transfer at the earliest possible opportunity.

With best regards,

Edward Honnold, J.D., LICSW

LICENSED INDEPENDENT CLINICAL SOCIAL WORKER

PLAINTIFF'S
EXHIBIT
4.C.

4

11

RAYMOND I. BAND, M. D.
4545 42ND ST. N. W.
WASHINGTON, D. C. 20016
TELEPHONE 202 362-0377

5 July 2006

re Rand, Elaine

Mr Gloria C. Booze
EEO Officer

Dear Mr Booze:

I have seen Mr Rand today. Her condition has worsened + the anxiety portion of her current Disorder has turned into a panic Reaction. She is unable to return to this stressful environment + be able to function. She is currently being medicated for this reaction and needs further accomodation for her condition i.e. removal from her stressful situation. see my letter of 1 July 2006

Sincerely

Raymond I. Band M.D

PLAINTIFF'S
EXHIBIT
4. D
PENGAD-Bayonne, N. J.

5

Aug 04 06 03:26p      Elaine Rand                                              p.4

# EDWARD HONNOLD, J.D., LICSW

TRANSITIONS COUNSELING

SUITE 503
1660 L STREET, N.W.
WASHINGTON, D.C. 20036
(202) ~~726-4460~~
244-2586

July 28, 2006

Ms. Gloria Booze, EEO Officer
U.S. Department of the Treasury
Washington, D.C.

Dear Ms. Booze:

This letter supports the immediate transfer or detail of Ms. Elaine Rand, an employee of the U.S. Department of the Treasury, as a reasonable accommodation to Ms. Rand's physical and mental impairment, and to her consequent inability to function according to her customary high performance standards, under the harsh supervisory conditions existing in the Office of Competitive Sourcing.

I am a Licensed Independent Clinical Social Worker (LICSW) who has been in private practice in the District of Columbia since 1992. Since October 2003, I have counseled Ms. Rand in my practice on a range or personal and work-related issues. I have come to know Ms. Rand as a highly intelligent and resourceful professional with impeccable integrity.

Most recently, I have become aware that Ms. Rand has been subject to a pattern of relentless and hostile administrative scrutiny involving exhaustive oversight of her attendance record and various elements of her job performance. Despite consistently high performance ratings, Ms. Rand has apparently been subject to a pattern of harassing administrative interventions that have led her to become significantly disabled, suffering symptoms of extreme anxiety and feelings of professional insecurity and self-doubt, and interfering with her capability to maintain her usual high performance standards.

Outside the workplace, Ms. Rand's physical and mental impairment has substantially limited a wide range of her major life activities, including her ability to manage basic household chores, maintain her customary high standards of personal hygiene, sustain a normal social life, and circulate freely outside the home.

As a consequence of the external stressors in her relationship with her supervisor, Ms. Rand's clinical condition meets diagnostic criteria for an Adjustment Disorder with Mixed Disturbance of Emotions and Conduct (DSM IV Code 309.4). It is my professional opinion that Ms. Rand's prognosis is good, but only if she is removed from the daily trauma of this supervisory relationship.

PLAINTIFF'S
EXHIBIT
4.E

PENGAD-Bayonne, N.J.

LICENSED INDEPENDENT CLINICAL SOCIAL WORKER

1

EDWARD HONNOLD, J.D., LICSW

TRANSITIONS COUNSELING

SUITE 503
1660 L STREET, N.W.
WASHINGTON, D.C. 20036
(202) 726-4169
244-2886

Despite repeated efforts by Ms. Rand to initiate mediation of these issues and to seek other counsel and recourse within the Department, the extreme supervisory scrutiny of Ms. Rand has persisted. Though I have worked with Ms. Rand to explore every possible constructive avenue to resolve these issues internally, there no longer appears to be a realistic prospect for satisfactory resolution of these issues within the Office of Competitive Sourcing.

Fortunately, there appears to be an opportunity for administrative transfer or detail of Ms. Rand to the Office of Financial Education in the Treasury Department's Office of Domestic Finance. Such a transfer or detail would appear to be a reasonable administrative accommodation to Ms. Rand's disability and to her currently high degree of sensitivity to the supervisory conditions now prevailing in her current office. Therefore I strongly and respectfully encourage the Department to take all steps necessary in order to effectuate this transfer at the earliest possible opportunity.

With best regards,

Edward Honnold, J.D., LICSW

LICENSED INDEPENDENT CLINICAL SOCIAL WORKER



**Attending Physician's Report**

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

Record of Examination

| 1. Patient's name | Last | First | Middle | 2. Date of injury mo., day yr. | 3. OWCP File Number | OMB No. 1215-0103 Expires: 10-31-08 |
|---|---|---|---|---|---|---|
| | Rand | Margaret | E | 07/03/2006 | 252063918 | |

4. What history of injury (including disease) did patient give you?

> See attachment

5. Is there any history or evidence of concurrent or pre-existing injury or disease or physical impairment? (If yes, please describe)

☒ Yes  ☐ No    See attachment

ICD-9 Code   DSMIV309.2 8

6. What are your findings? (Include results of X-Rays, laboratory reports, etc.)

> See attachment

7. What is your diagnosis?

> See attachment

ICD-9 Code   DSMIV309.2 8

8. Do you believe the condition found was caused or aggravated by an employment activity? (Please explain answer)

☒ Yes  ☐ No    See attachment

9. Did injury require hospitalization? If no, go to item # 13    ☐ Yes  ☒ No

10. Date of admission mo., day yr.

11. Date of discharge mo., day yr.

12. Additional Hospitalization required If Yes, describe in "Remarks" (item 25)  ☐ Yes  ☐ No

13. What treatment did you provide?

> See attachment

| 14. Date of first examination mo., day yr. | 15. Date(s) of treatment: mo., day yr.    mo., day yr.    mo., day yr. | 16. Date of discharge from treatment mo., day yr. |
|---|---|---|
| 07/05/2006 | | |

17. Period of total disability From mo., day yr. Thru mo., day yr.

18. Period of Partial Disability From mo., day yr. Thru mo., day yr.

19. Date employee able to resume light work mo., day yr.    N/A

20. Date employee is able to resume regular work mo., day yr.    *Not ready to return to work*

21. Has employee been advised that he/she can return to work?  ☐ Yes ☒ No

22. If yes, on what date was he/she advised? mo., day yr.    N/A

23. If employee is able to resume only light work, indicate the extent of physical limitations and the type of work that could reasonably be performed with these limitations. (Continue in item #25 if necessary.) N/A

24. Are any permanent effects expected as a result of this injury? If yes, describe in item #25.  ☒ Yes  ☐ No

25. Remarks

> See attachment

26. If you have referred the employee to another physician provide the following:

Name  Ed Honnold LICSW—on her own

Address  1660 L Street, NW    Suite 503

City  Washington   State  DC   ZIP  20036

Specialty  Transition Services & ~~Consulting~~

27. What was the reason for this referral?

☒ Consultation  ☐ Treatment

Signature

28. I certify that the statements in response to the questions asked above are true, complete and correct to the best of my knowledge. Further, I understand that any false or misleading statements or any misrepresentation or concealment of material fact which is knowingly made may subject me to felony criminal prosecution.

Signature of Physician _____   Date  08/29/2006

29. Name of Physician  Raymond I. Rand M.D.P.C.

Address  4545 42nd Street, N.W.   Suite 310

City  Washington   State  DC   ZIP  20016

30. Tax ID Number  EIN 52 11 95 44 3

31. Do you specialize?  ☒ Yes  ☐ No

32. If yes, indicate specialty  Board certified in Psychiatry

PLAINTIFF'S EXHIBIT 4.F.

RAYMOND I. BAND, M. D.
4545 42ND ST. N. W.
WASHINGTON; D. C. 20016
——
TELEPHONE 202 362-0377

**Attachment to Form CA-20 re Margaret E. Rand's injury claim.**    Case #252063918

*Question #4: What history of injury (including disease) did patient give you?*

Please refer to the recent history explained in Question #5 below. This is a new injury.

*Question #5: Is there any history or evidence of concurrent or pre-existing injury or disease or physical impairment?*

A few times in the recent past, patient has had episodes of Anxiety and Depression reacting to precipitating events in her life; thus, I have seen Ms. Rand on occasion for Psychiatric and Psychopharmacological treatment. Usually there was a return to full functioning rapidly. These episodes were asymptomatic prior to the recent event on July 3, 2006. Her reaction this time was to a level of decompensation, not seen before.

*Question#6: What are your findings? (Include results of X-Rays, laboratory reports, etc.)*

While medication has given her a modicum of relief, a change in her situation is indicated. Her condition has worsened and the Anxiety portion of her current Disorder has turned into a Panic Reaction. She is unable to return to this stressful environment and be able to function.

Patient has lost the ability to function in her specific work situation due to Depression, Anxiety and Panic. She cannot control her mood or Anxiety in her work situation. She is unable to concentrate.

*Question #7: What is your diagnosis?*

Her diagnosis is Adjustment Disorder with Mixed Anxiety and Depressed Mood (DSM IV 309.28.) Briefly, "The development of emotional or behavioral symptoms in response to an identifiable stressor(s) occurring within 3 months of the onset of the stressor(s).

"These symptoms or behaviors are clinically significant as evidenced by either of the following:
(1) marked distress that is in excess of what would be expected form exposure to the stressor.
(2) significant impairment in social or occupational (academic) functioning."

15

CONFIDENTIAL FOR PROFESSIONAL USE ONLY

RAYMOND I. BAND, M. D.
4545 42ND ST. N. W.
WASHINGTON, D. C. 20016
—
TELEPHONE 202 362-0377

*Question #8: Do you believe the condition found was caused or aggravated by an employment activity? (Please explain answer)*

From the patient's history (since January, 2006), after a change in supervisors she has felt singled out for humiliation, demeaned without reason. She feels this has been based on the desire to "get rid" of her. These actions have been shown to be precipitating events in her current Disorder. I wrote a letter to Ms. Gloria Booze, Department of the Treasury, Departmental Offices, attesting to her situation and indicating the importance of changing her placement since this had become the sole stressor for her Disorder.

Ms. Rand has a history of superior performance for long periods of time. Recently she was doing well until a change in supervisors. This situation has become a stressor which has precipitated her current difficulty.

With relief of her stressor, her prognosis is good as exemplified by her recent evaluations prior to her current situation. Hence a Reasonable Accommodation, i.e., shift of stressor, would enable her to return to her previous productive work.

*Question #13: What treatment did you provide?*

The patient was seen on 27 April 2006. At this time, she described a growing situation in her workplace. She had returned from vacation in January 2006 to find her supervisors were changed. Prior to January 2006, she felt she was working well and had been doing a good job for over a year and a half.

The patient has been placed on anti-anxiety and anti-depressant medication. She was prescribed Welbutrin, 150mg. twice a day. When her condition worsened, her medication was adjusted: double her Welbutrin to 300 mg. twice a day and add Klonopin .5mg. 3-5 times/day for anxiety. She has been seen on occasion for Psychiatric intervention. She continues to see her therapist (Mr. E. Honnold – question # 26 below).

We discussed the implications of her situation and how she might proceed. She continued to see her therapist. On 22 June 2006 I saw the patient again. She was now on the verge of decompensation.

I next saw her on 5 July 2006 when she was no longer able to work in her current situation. She now had severe anxiety and panic in that situation. She cannot concentrate or control her mood.

Medical Report Submission                    2                    Case #252063918
Dr. Raymond I. Band. M.D.P.C.                                      August 29. 2006

16

CONFIDENTIAL FOR PROFESSIONAL USE

RAYMOND I. BAND, M. D.
4545 42ND ST. N. W.
WASHINGTON, D. C. 20016
—
TELEPHONE 202 362-0377

*Question #25: Are any permanent effects expected as a result of this injury?  If yes, describe in
item #25.*

There is no evidence of any other aggravating stress.  With removal of her stressor, i.e., the work
situation, and placed in a less-charged environment, I believe the patient will be able to return to
productive work as she has in the past.  In summary, her diagnosis is DSM IV 309.28 and a GAF
of approximately 45: "unable to work."  Indications at MMI: removal from noxious environment.
She should be able to work in a reasonable and usual environment.

_____          29 August 2006
     Raymond I. Band, M.D.P.C.                    Date

17

EDWARD HONNOLD, J.D., LICSW
_____

TRANSITIONS COUNSELING

SUITE 503
1660 L STREET, N.W.
WASHINGTON, D.C. 20036
(202) 726-4169

September 17, 2006

Workmen's Compensation Claims
U.S. Department of Labor

Re: Workmen's Compensation Claims of Ms. Elaine Rand

Dear Reviewing Staff:

As the outpatient psychotherapist for Ms. Elaine Rand, I wish to report an emergency telephone consultation I had with Ms. Rand on the morning of July 4, 2006, the national holiday.

I received an urgent, anxious voicemail message from Ms. Rand that morning requesting to speak with me right away concerning a frightening array of symptoms she had experienced the previous day at work, following an unpleasant interaction with her supervisor. Ms. Rand reported that she had felt extreme shortness of breath, dizziness, sweating, numbness and nausea. I suggested to Ms. Rand that these symptoms comprised the classic indicators of an anxiety (panic) attack. Ms. Rand described the precipitating event with her supervisor, and we discussed the extraordinary nature of the challenges she faced under the traumatic circumstances of this supervisory relationship.

With this emergency consultation, Ms. Rand was able to calm herself sufficiently in order to be able to manage her feelings safely for the remainder of the day. We agreed to continue working with the traumatic consequences of this supervisory relationship in our subsequent individual session.

I have no doubt in my mind that Ms. Rand experienced a significant anxiety attack at work on July 3, 2006 as a direct consequence of her interactions with her supervisor.

Sincerely yours,

Edward Honnold, LICSW



PLAINTIFF'S
EXHIBIT
4.6.

12

18

EDWARD HONNOLD, J.D., LICSW

TRANSITIONS COUNSELING

SUITE 503
1660 L STREET, N.W.
WASHINGTON, D.C. 20036
(202) 726-4469
244-2886

September 21, 2006

Workmen's Compensation Claims
U.S. Department of Labor

Re: Workmen's Compensation Claims of Ms. Elaine Rand

Dear Reviewing Staff:

As the outpatient psychotherapist for Ms. Elaine Rand, I wish to report an emergency telephone consultation I had with Ms. Rand on the morning of July 4, 2006, the national holiday.

I received an urgent, anxious voicemail message from Ms. Rand that morning requesting to speak with me right away concerning a frightening array of symptoms she had experienced the previous day at work, following an unpleasant interaction with her supervisor. Ms. Rand reported that she had felt extreme shortness of breath, dizziness, sweating, numbness and nausea. I suggested to Ms. Rand that these symptoms comprised the classic indicators of an anxiety (panic) attack. Ms. Rand described the precipitating event with her supervisor, and we discussed the extraordinary nature of the challenges she faced under the traumatic circumstances of this supervisory relationship.

With this emergency consultation, Ms. Rand was able to calm herself sufficiently in order to be able to manage her feelings safely for the remainder of the day. We agreed to continue working with the traumatic consequences of this supervisory relationship in our subsequent individual session.

Within a reasonable degree of medical certainty, I believe that Ms. Rand experienced a significant anxiety attack at work on July 3, 2006 as a direct consequence of her interactions with her supervisor.

Sincerely yours,

Edward Honnold, LICSW

LICSW

PLAINTIFF'S
EXHIBIT
4.H
PENGAD-Bayonne, N.J.

LICENSED INDEPENDENT CLINICAL SOCIAL WORKER

13

Certification of Health Care Provider
(Family and Medical Leave Act of 1993)

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division

---

*(When completed, this form goes to the employee, __Not to the Department of Labor.__)*

| OMB No.: 1215-0181 |
| Expires: 08-31-2007 |

---

| 1. Employee's Name | 2. Patient's Name *(If different from employee)* |
| M. Elaine Rand | |

---

3. Page 4 describes what is meant by a **"serious health condition"** under the Family and Medical Leave Act. Does the patient's condition[1] qualify under any of the categories described? If so, please check the applicable category.

   (1) _____   (2) _____   (3) _____   (4) __✔__   (5) _____   (6) _____ , or None of the above _____

4. Describe the **medical facts** which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:

   In the recent past, Ms. Rand has had episodes of Anxiety & Depression reacting to precipitating events in her life; thus I have seen her on occasion for Psychiatric and Psychopharmacological treatment. There was a return to full functioning rapidly except for these episodes. They were asymptomatic prior to the July 3, 2006 event. Her reaction then was to a level of decompensation not seen before. Her diagnosis is Adjustment Disorder with Mixed Anxiety and Depressed Mood (DSM IV 309.28.): "The development of emotional or behavioral symptoms in response to an identifiable stressor(s) occurring within 3 months of the onset of the stressor(s). These symptoms or behaviors are clinically significant as evidenced by the following: (1) marked distress that is in excess of what would be expected from exposure to the stressor. (2) significant impairment in social or occupational functioning."

5. a. State the approximate **date** the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present **incapacity**[2] if different):

   The onset of the current condition was 7/3/06. The probable duration will be until she has relief of her stressor at work. Her prognosis is good as exemplified by her recent evaluations prior to her current situation. Hence a reasonable accommodation, i.e., shift of stressor, would enable her to return to her previous productive work.

   b. Will it be necessary for the employee to take work only **intermittently or to work on a less than full schedule** as a result of the condition (including for treatment described in Item 6 below)?

   No — as long as she has to be in that specific environment (the current job, as described in letter of 9/25/06 to return to work). Otherwise, she should be able to return to work.

   If yes, give the probable duration:

   c. If the condition is a **chronic condition** (condition #4) or **pregnancy**, state whether the patient is presently incapacitated[2] and the likely duration and frequency of **episodes of incapacity**[2]:

   Since the July 3, 2006 event, patient has been incapacitated as evidenced by several episodes of anxiety and depression. This has negatively affected her daily activities. She has been placed on anti-anxiety and anti-depressant medication and has been treated by me and her therapist. When her condition worsened, her medication was adjusted to a higher level. She continues to suffer the medical condition described in #4 above.

---

[1] Here and elsewhere on this form, the information sought relates **only** to the condition for which the employee is taking FMLA leave.

[2] "Incapacity," for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom.

Form WH-380
Revised December 1999



PLAINTIFF'S
EXHIBIT
4 o I
PENGAD-Bayonne, N. J.

20

6. a. If additional treatments will be required for the condition, provide an estimate of the probable number of such treatments.

The patient will continue seeing her therapist, Edward Honnold, LICSW, as she has in the past, on a weekly basis. She sees me on occasion for psychiatric treatment and discussion or adjustment of her medication. The number of treatments with me depends on the episodes of depression and anxiety that she continues to have. If and when those diminish significantly, I will be able to provide an estimate of continuing treatments.

If the patient will be absent from work or other daily activities because of treatment on an **intermittent** or **part-time** basis, also provide an estimate of the probable number of and interval between such treatments, actual or estimated dates of treatment if known, and period required for recovery if any:

Dates of treatment have been weekly with the therapist since January, 2006. I have seen her on 27 April, 22 June, and on 5 July, when she was no longer able to work in her current situation. I have spoken with her often by telephone and seen her on 22 August, 30 August, 5 September, 26 September, and 2 October of this year. I will continue to see her as needed.

b. If any of these treatments will be provided by **another provider of health services** (e.g., physical therapist), please state the nature of the treatments:

Therapy by LICSW Edward Honnold in Washington, DC.

c. **If a regimen of continuing treatment** by the patient is required under your supervision, provide a general description of such regimen (e.g., prescription drugs, physical therapy requiring special equipment):

The patient has been placed on anti-anxiety (Klonopin) and anti-depressant (Wellbutrin) medication. When her condition worsened, her medication was adjusted: increasing the Wellbutrin and a change from another anti-anxiety medication to Klonopin. She continues to have treatments with me and Mr. Honnold.

7. a. If medical leave is required for the employee's **absence from work** because of the **employee's own condition** (including absences due to pregnancy or a chronic condition), is the employee **unable to perform work** of any kind?

I wrote a letter to Ms. Gloria Booze, DO, Treasury, attesting to her situation and indicating the importance of changing her placement since this had become the sole stressor for her Disorder. Without such change, she is unable to perform any of the functions of the position described in the letter of 25 September, 2006 from Mr. Sullivan.

b. If able to perform some work, is the employee **unable to perform any one or more of the essential functions of the employee's job** (the employee or the employer should supply you with information about the essential job functions)? If yes, please list the essential functions the employee is unable to perform:

Yes, employee cannot concentrate. She is subject to serious episodes of depression and anxiety. She cannot control her mood. She cannot perform the duties of the position described that has been the sole stressor of her current condition.

c. If neither a. nor b. applies, is it necessary for the employee to be **absent from work for treatment?**

8.  a.  If leave is required to **care for a family member** of the employee with a serious health condition, **does the patient require assistance** for basic medical or personal needs or safety, or for transportation?

b.  If no, would the employee's presence to provide **psychological comfort** be beneficial to the patient or assist in the patient's recovery?

c.  If the patient will need care only **intermittently** or on a part-time basis, please indicate the probable **duration** of this need:

_Raymond J. Bond_ M.D. P.C.                    _Psychiatry_
Signature of Health Care Provider              Type of Practice

_4545  42nd  St. N.W    -# 310_                _202-362-0366_
Address  _Washington  D.C  20016_              Telephone Number
                                               _2 October 2006_
                                               Date

**To be completed by the employee needing family leave to care for a family member:**

State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

_____        _____
Employee Signature                              Date

16

22

RAYMOND I. BAND, M. D.
4545 42ND ST. N. W.
WASHINGTON, D. C. 20016
—
TELEPHONE 202 362-0377

U.S. Department of the Treasury
Departmental Offices
MS Room 6141
1500 Pennsylvania Avenue, N.W.
Washington, DC 20220

December 29, 2006

Dear Mr. Sullivan:

Last October, I submitted a report to Treasury stating Ms. Rand's condition was chronic and acutely exacerbated by her work. I stated that her diagnosis was Adjustment Disorder with Mixed Anxiety and Depressed Mood (DSM IV 309.28). The marked distress and anxiety has not diminished during this past three-month period. Her medication was adjusted again to a higher level to meet the needs of her ongoing distress. She continues to see her LICSW therapist, Edward Honnold, on a weekly basis due to her condition. I continue to consult as needed on her treatment and medication.

Her condition at this time seems to be intimately connected with her ongoing work situation, which continues to perpetuate her illness. Unfortunately, it is difficult to continue this situation and have her productive. Since Ms. Rand has a history of capable work, some change in this environment would be indicated so she could return to her productivity. In Ms. Rand's present placement, there must be some flexibility to accommodate her situation so that she can continue her productive work, or transfer her to another environment. Unfortunately, once a condition as Ms. Rand has, has developed, it is difficult to change without some shift in her work situation.

If I can be of further help, please be in touch with me.

Sincerely,

Raymond I. Band, M.D.P.C.

CONFIDENTIAL FOR PROFESSIONAL USE ONLY



PLAINTIFF'S
EXHIBIT
4.J.

17

23

DWARD HONNOLD, J.D., LICSW

RANSITIONS COUNSELING

SUITE 503
1660 L STREET, N.W.
WASHINGTON, D.C. 20036
(202) ~~726-4169~~
244-2886

January 2, 2007

TO WHOM IT MAY CONCERN:

RE:   Ms. Elaine Rand

I am a Licensed Independent Clinical Social Worker (LICSW) who has been in private practice in the District of Columbia since 1992.   Since October 2003, I have counseled Ms. Rand in my private outpatient psychotherapy practice on a weekly basis, and I continue to meet regularly with Ms. Rand.

Ms. Rand suffers an acute psychiatric disorder that meets diagnostic criteria for an Adjustment Disorder with Mixed Disturbance of Emotions and Conduct (DSM IV Code 309.4).  This condition has been characterized by acute symptoms of panic, anxiety and difficulty sustaining minimum standards of personal and professional activity.   Her psychiatric condition has been greatly aggravated by the severe and oppressive conditions present in the office to which she has been assigned in the U.S. Department of the Treasury.

Despite her best efforts, Ms. Rand's acute impairment of her mental and physical functioning has not abated, and her symptoms prevent her from resuming her regular functions in this office.  In my professional opinion, Ms. Rand will be exposed to a severe risk of further deterioration of her condition if she is compelled to return to service in her most recent place of employment.  I have therefore strongly advised her, on mental health grounds, against reporting for duty to this office.  I would urge the Department of the Treasury to make alternative employment options available within the Department to this highly competent woman so she can regain her health and restore her fundamental self-esteem.

With best regards,

Edward Honnold, LICSW



PLAINTIFF'S
EXHIBIT
4.K.

LICENSED INDEPENDENT CLINICAL SOCIAL WORKER

18

24