IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARGARET ELAINE RAND ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: 08-703 (PLF) |
| ) | |
| v. ) | |
| ) | |
| HENRY K. PAULSON, ) | |
| Secretary of the Treasury, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF HIS MOTION FOR PARTIAL DISMISSAL OF THE COMPLAINT, OR ALTERNATIVELY FOR PARTIAL SUMMARY JUDGMENT**

Defendant, Henry K. Paulson, Secretary of the Treasury, hereby files his reply brief in further support of his motion for partial dismissal, or alternatively, partial summary judgment of the complaint.

## INTRODUCTION

In his initial motion, defendant exhaustively illustrated why plaintiff's failure to accommodate claim, brought pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 701, was subject to dismissal or alternatively summary judgment, namely, because plaintiff failed to exhaust her administrative remedies and, in addition, plaintiff cannot establish that she is disabled within the meaning of the Rehabilitation Act.

Plaintiff's opposition to defendant's motion fails to undermine either of defendant's arguments. In her opposition to defendant's motion, plaintiff admits that she did not exhaust her administrative remedies. Plaintiff's Opposition to Defendant's Motion for Partial Dismissal or Partial Summary Judgment ("Pl.'s Opp'n") at 3; compare Defendant's Statement of Material

Facts at to Which There is no Genuine Issue ("Def.'s Stmt.") ¶ 9 with Plaintiff's Response to Defendant's Statement of Material Facts as to Which There is No Genuine Issue ("Pl.'s Resp.") ¶ 9. See also Pl.'s Resp. ¶ 5 ("Seeing an EEO counselor for this issue would have been redundant."); Pl.'s Opp'n, Ex. 1, Declaration of Plaintiff ("Pl.'s Decl.") ¶ 4 ("I did not seek EEO counseling from the agency when my request for reasonable accommodation was initially denied on August 1, 2006, because the decision indicated that reconsideration could be sought and I intended to do so."). However, according to plaintiff, she was not required to exhaust her administrative remedies regarding her disability claim by contacting an EEO officer within 45 days of the denial of her request for an accommodation because she could simply chose to raise this claim, over six months later, after her termination was proposed. Furthermore, despite the extensive evidence, submitted by plaintiff, that she was disabled by virtue of having to work under the supervision of her particular supervisor, plaintiff now contends that in fact she does not claim that she is disabled by virtue of working with one supervisor, but was disabled as "the result of working in an environment where I was micro-managed and harassed." Pl.'s Decl. ¶ 2. Plaintiff also contends that she is significantly limited in the major life activity of working because she is precluded from working "full time or in any highly demanding or stressful job." Id. ¶ 5.

      Plaintiff's contentions are wholly devoid of merit and dismissal, or alternatively summary judgment, concerning her failure to accommodate claim is warranted.

**ARGUMENT**

I.   **PLAINTIFF WAS REQUIRED TO EXHAUST HER ADMINISTRATIVE REMEDIES CONCERNING HER FAILURE TO ACCOMMODATE CLAIM.**

Plaintiff contends that she was not required to exhaust the August 1, 2006, denial of her request for an accommodation because it "is part of her removal claim, for which plaintiff has exhausted all administrative claims, since she filed a timely mixed case complaint, alleging violation of the Rehabilitation Act, including failure to accommodate her disability, with the Merit Systems Protection Board ["MSPB"] after receiving the decision on her removal." Pl.'s Opp'n at 3. Thus, plaintiff contends, "[s]he was not required to see an EEO counselor since she was the victim of an adverse action, removal, appealable to the [MSPB]." Id.

Plaintiff's argument, if accepted, would completely undermine the requirement of exhaustion of administrative remedies. See 42 U.S.C. § 2000e-16(c)); 29 C.F.R. § 1614.407. Accepting plaintiff's proposition would lead to the illogical conclusion that an employee aggrieved by the denial of a request for an accommodation need not exhaust her administrative remedies by contacting an EEO counselor within 45 days of the denial but instead could do nothing and, supposing the agency later proposes the employee's termination, she could then choose to resurrect her accommodation claim, no matter how long ago her request had been denied. That is not the law. Rather, the law requires that employees challenging a denial of a request for an accommodation contact an EEO counselor within 45 days of the denial. 29 C.F.R. § 1614.105(a)(1). See also Raines v. United States Dep't of Justice, 424 F. Supp. 2d 60, 65 (D.D.C. 2006); Wilderness v. Snow, No. Civ.A. 04-0708, 2006 WL 571930, at *3 (D.D.C. Mar. 4, 2006) (holding that plaintiff's request for a "work at home" accommodation under the

Rehabilitation Act was untimely because she did not contact an EEO counselor within 45 days of the denial of that request). And this is true even of employees who are subsequently terminated and challenge their termination with the MSPB. See, e.g., Ikossi v. Department of the Navy, 516 F.3d 1037, 1044 (D.C. Cir. 2008) (holding that plaintiff could not raise pre-termination claims in district court because she failed to appeal to the EEOC within 90 days of the dismissal of her administrative complaint and she never requested timely consideration of those claims by the MSPB).[1]

In her declaration, but nowhere in her opposition brief, plaintiff contends that she did not seek EEO counseling when her request for an accommodation was "initially denied on August 1, 2006 because the decision indicated reconsideration could be sought and I intended to do so." Pl.'s Decl. ¶ 4. This "argument" is factually and legally inaccurate. First, it is clear that plaintiff chose to seek reconsideration of the denial of her request only after she was notified of the proposal to terminate her employment, and thus it is dubious that this request can be construed as a proper request for an accommodation. See, e.g., Lowery v. Hazelwood Sch. Dist., 244 F.3d 654, 658 & n.3 (8th Cir. 2001) (noting that plaintiff's "eleventh-hour" request for an

---

[1] Defendant does not contend that plaintiff can not, on failure to exhaust grounds, raise an argument that her termination was discriminatory because it was based on her alleged disability. However, defendant does contest plaintiff's ability to raise her separate failure to accommodate claim, which had been denied in 2006, as part of her termination claim. See Pl.'s Opp'n at 4 ("Refusal to accommodate is tied to the removal action and part of plaintiff's argument that her termination was in violation of the Rehabilitation Act."). Plaintiff never exhausted her failure to accommodate claim by contacting an EEO counselor within 45 days of the denial of her request and therefore it cannot be asserted at this juncture. However plaintiff could, and did, allege disability discrimination as part of her "mixed case" complaint before the MSPB. Yet, to the extent plaintiff seeks to assert a claim that she was terminated because of her alleged disability in this Court, a finding by the Court that plaintiff is not an individual with a disability sounds the death knell for any such claim.

accommodation made "immediately after" he was informed of the recommendation that his employment be terminated was more properly construed as a "request[ ] for reinstatement, not for accommodation.") (citation omitted). Second, plaintiff's responsibility to appeal the denial of her request for accommodation was triggered when her request was initially denied; she could not unilaterally decide to seek reconsideration at some point beyond the 45-day period in which she was required to contact an EEO counselor. See Mayers v. Laborers' Health & Safety Fund of North America, 478 F.3d 364, 368-69 (D.C. Cir. 2007) (holding that plaintiff failed to exhaust her failure to accommodate claim, which was a discrete discriminatory act, within the requisite filing period); Norden v. Samper, 503 F. Supp. 2d 130, 147 (D.D.C. 2007) (holding that the continuing violations theory was not applicable to plaintiff's failure to accommodate claim because the defendant's denial of plaintiff's specific requests for an accommodation "were discrete acts. They were obviously related to later acts of alleged discrimination, but that alone is insufficient to render them part of a 'continuing violation.'") (citation omitted). Thus, in this case, plaintiff's subsequent request for reconsideration does not rectify her failure to timely exhaust her accommodation claim.

In short, plaintiff never appealed her failure to accommodate claim, and therefore she is unable to assert that claim in this lawsuit.

**II.    PLAINTIFF IS NOT DISABLED.**

Plaintiff contends that she is entitled to protection under the Rehabilitation Act because she suffers from an impairment that significantly limits her in the major life activity of working. Pl.'s Opp'n at 4. Plaintiff's own exhibits and declaration readily establish that she is not a qualified individual with a disability as required for protection under the Rehabilitation Act.

5

### A. Plaintiff's Alleged Impairment is Not Permanent or Long-Term.

Defendant previously argued in his motion for partial dismissal/summary judgment that plaintiff's alleged impairment does not qualify under the Rehabilitation Act because the impact of her alleged impairment was only triggered by having to work for one particular supervisor. See Defendant's Memorandum of Law in Support of His Motion for Partial Dismissal of the Complaint or, Alternatively, Partial Summary Judgment ("Def.'s Mem.") at 9-12. In her opposition, plaintiff contends that defendant has misconstrued her claim and that in fact, she does not claim that "her 'disability stems solely from her dissatisfaction working with one supervisor' . . . ." Pl.'s Opp'n at 4. Plaintiff now claims that "her disability is the result of working in an environment where she was micro-managed and harassed." Id.[2]

Plaintiff's post-litigation argument is belied by her own documentation that was submitted to the agency during her employment, which repeatedly reinforces the fact that it was her supervisor, not a general atmosphere of micro-management and harassment, that caused her to suffer effects of her alleged impairment. See, e.g., Defendant's Motion for Partial Dismissal of the Complaint or, Alternatively, for Partial Summary Judgment ("Def.'s Mot."), Ex. A (Plaintiff's Request for an Accommodation) ("Because of the anxiety caused by supervisor who discriminates against me by watching every single minute of my day and accusing me of not being at my desk when I am, I can no longer perform the duties of a regular, capable employee.")

---

[2]Interestingly, plaintiff does not specify who was the source of this alleged micro-managing and harassment, although it is likely it was no one other than her supervisor, as she contended in her request for an accommodation. See Defendant's Motion for Partial Dismissal of the Complaint or, Alternatively, for Partial Summary Judgment ("Def.'s Mot."), Ex. A (Plaintiff's Request for an Accommodation) ("Because of the anxiety caused by supervisor who discriminates against me . . . . I can no longer perform the duties of a regular, capable employee.").

(emphasis added); Pl.'s Opp'n, Ex. 4A (Letter from plaintiff's clinical social worker to EEO officer dated June 26, 2006) ("This letter supports the immediate transfer or detail of Ms. Elaine Rand . . . under the conditions of extreme and apparent harsh <u>supervisory scrutiny</u> currently existing in the Office of Competitive Sourcing.") (emphasis added); <u>id.</u> Ex. 4B (Note from Raymond I. Band, M.D. to EEO officer dated July 1, 2006) (noting plaintiff's diagnosis "usually occurs in response to an identifiable stressor" and stating that plaintiff "was doing well <u>until a change in supervisors.  This situation has become a stressor</u> which has precipitated her current difficulty . . . [A] shift of stressor would enable her to return to her previous productive work.") (emphasis added); <u>id.</u> Ex. 4C (Letter from clinical social worker to EEO officer dated July 5, 2006) ("As a consequence of the external stressors <u>in her relationship with her supervisor</u>, Ms. Rand's clinical condition meets diagnostic criteria for an Adjustment Disorder with Mixed Disturbance of Emotions and Conduct. . . . It is my professional opinion that Ms. Rand's prognosis is good, <u>but only if she is removed from the daily trauma of this supervisory relationship.</u>") (emphasis added); <u>id.</u> Ex. 4E (same).[3] As defendant previously contended,

---

[3]This documentation is consistent with the documentation submitted by plaintiff in her request for reconsideration of the denial of her request for an accommodation, which was only filed after she was notified of her impending termination.  <u>See, e.g.</u>, Pl.'s Opp'n, Ex. 4F (Attending Physician's Report dated August 29, 2006) at 3-4 ("From the patient's history (since January, 2006), <u>after a change in supervisors</u> she has felt singled out for humiliation, demeaned, without reason. . . . <u>There is no evidence of any other aggravating stress</u>.  With removal of her stressor, i.e., the work situation, and placed in a less-charged environment, I believe the patient will be able to return to productive work as she has in the past.") (emphasis added); <u>id.</u> Ex. 4G & 4H (Letter to Workmen's Compensation Claims from clinical social worker dated September 17, 2006) ("Ms Rand described the precipitating event with her supervisor, and we discussed the extraordinary nature of the challenges she faced under the traumatic circumstances <u>of this supervisory relationship.</u>") (emphasis added); <u>id.</u> Ex. 4I (Certification of Health Care Provider dated October 2, 2006) ("The onset of the current condition was 7/3/06.  The probable duration will be until she has relief of her stressor at work.); <u>id.</u> at 2 ("I wrote a letter to Ms. Gloria Booze, DO, Treasury, attesting to [plaintiff's] situation and indicating the importance of changing her

plaintiff's aversion to one particular supervisor does not qualify as an impairment under the Rehabilitation Act. See Haynes v. Williams, 392 F.3d 478, 483 (D.C. Cir. 2004) ("If [the employee] could have avoided the [impairment's impact of] itching that seriously affected his sleep by simply working at a different location, then he was not 'substantially limited' in the major life function of sleeping.") (footnote omitted); Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132,142-43 (D.D.C. 2004) (holding that hypertension was not a disability under the Rehabilitation Act where "[t]he only circumstances in which plaintiff's hypertension is not controlled by medication is when she is working in an EPA office."), amended on reconsideration in part, 400 F. Supp. 2d 257 (D.D.C. 2005). Here, plaintiff's own doctors agreed that the sole stressor of her condition was her supervisor and that removal of that stressor, i.e., a change in working location or supervision, would enable plaintiff to perform successfully, as she had in the past. See supra at 6-7 & n.3.

Perhaps realizing that the documentation in existence from the time of her employment fails to support her contention that she is disabled, plaintiff now contends that the fact that her "impairment has a long term impact [is] demonstrated by the fact that she [has been] declared disabled by the Social Security Administration and plaintiff is still suffering from the effects of being micro-managed and harassed at the agency." Pl.'s Opp'n at 5. Again, this argument must be rejected. It is well established that merely having a diagnosis does not render an individual disabled for purposes of the Rehabilitation Act. In Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002), the Supreme Court cautioned that "[i]t is insufficient for individuals attempting to prove disability status to merely submit evidence of a medical diagnosis

---

placement since this had become the sole stressor for her Disorder.") (emphasis added).

of an impairment. Instead, the Act requires [Plaintiff] . . . to prove a disability. . . ." Thus, "merely having an impairment does not make [an individual] disabled." Id. Instead, plaintiffs must "prove a disability by offering evidence that the extent of the limitation [caused by the impairment] in terms of their own experience is substantial.'" Id. at 201-02. To qualify as "substantial," "the impairment's impact must also be permanent or long-term." Id. at 201. Plaintiff's alleged impairment does not meet this requirement.[4] Accordingly, plaintiff cannot show that she had any impairment that had a long-term or permanent effect and thus she cannot show that she is disabled within the meaning of the Rehabilitation Act.

**B.      Plaintiff is Not Significantly Limited in the Major Life Activity of Working.**

Plaintiff contends that she is significantly limited in the major life activity of working because "[s]he is precluded from the substantial class or broad category of jobs where she would

---

[4]In addition, the ADA and the Rehabilitation Act do not define disability in the same manner as the Social Security Administration ("SSA"), thus "the application for an award of [social security] benefits is not dispositive of an ADA claim." Lee v. City of Salem, 259 F.3d 667, 673 (7th Cir. 2001). See also Cleveland v. Policy Mgmt. Systems Corp., 526 U.S. 795, 803-05 (1999) (discussing differing standards between ADA's definition of disability and definition employed by the SSA). Furthermore, plaintiff's disability determination by the SSA was made subsequent to the agency's decision regarding plaintiff's termination and thus it provides no support for a finding that plaintiff was disabled at the time of the events about which she complains. See, e.g., Kalekiristos v. CTF Hotel Mgmt. Corp., 958 F. Supp. 641, 657 (D.D.C. 1997) (noting that evidence "generated after the plaintiff was terminated from his job and reports about which the defendant employer had absolutely no knowledge nor access prior to terminating the plaintiff can not serve as the sole evidentiary basis of establishing a prima facie case of disability discrimination. A person alleging a disability protected by the ADA has a burden of establishing with medical evidence the existence of the alleged disability, and presenting the documentation during the term of employment, not following termination.") aff'd, 132 F.3d 1481 (D.C. Cir. 1997); Weigert v. Georgetown Univ., 120 F. Supp. 2d 1, 7 (D.D.C. 2000) (rejecting medical evidence of disability "prepared after the plaintiff was terminated from her job," and holding that the plaintiff must present evidence of her disability contemporaneous with the relevant employment period.").

have to work full time in a high stress atmosphere." Pl.'s Opp'n at 6.[5]  However, this argument is readily belied by the documentation, submitted by plaintiff, demonstrating her doctors' opinions that she would be able to return to work provided she had a change in supervisors.  See supra at 6-7 & n.3.  Notably, plaintiff's own request for an accommodation indicated that she would be perfectly capable of working in a position that was not supervised by her current supervisor: "I am requesting that I be allowed to go on this detail immediately.  I believe that I will be able to perform my duties as well as the time before being subjected to this current supervisor." Def.'s Mot., Ex. A at 2.[6]

It is clear that plaintiff, a "well educated [woman] . . . very capable of 'complex' projects[,]" id., is not significantly precluded from working in a broad class of jobs, which is

---

[5] Plaintiff also contended in her opposition that she is significantly limited in "her ability to manage basic household chores, personal hygiene and socializing." Pl.'s Opp'n at 6.  While plaintiff's opposition cites to paragraph 5 of her declaration in support of this statement, paragraph 5 of plaintiff's declaration contains no indication that plaintiff considers herself limited in these areas.  Rather, plaintiff only asserts that she has "been significantly limited in the major life activity of working since I cannot work full time or in any highly demanding stressful job." Pl.'s Decl. ¶ 5.  Thus, assuming managing household chores, personal hygiene and socializing were major life activities, a dubious assumption at best, plaintiff has not provided any evidence to support a finding that she was limited in any other alleged major life activities aside from working.

[6] Plaintiff contends that the agency initially agreed to let her work a detail "but then it reneged." Pl.'s Opp'n at 5.  According to plaintiff, "[t]his violated the Rehabilitation Act and Americans with Disabilities standards." Id. (citations omitted).  However, plaintiff provides no evidence to suggest, nor does she contend, that the agency initially agreed to this detail as a form of a reasonable accommodation.  And, significantly, plaintiff admits in her declaration that the dispute concerning her request to be detailed pre-dated her request for an accommodation. Pl.'s Decl. ¶ 3 ("I tried hard to find a detail or reassignment but my supervisors refused to allow me to be detailed although they had previously agreed to do so.  I filed a formal internal agency complaint in 2006, after timely contact with an EEO counselor.  This complaint . . . includes denial of the detail in June 2006 and continuing harassment and discrimination and reprisal from February 2006 to June 2006.").  Thus, there is no basis to find that the agency's initial denial of plaintiff's request for a detail was related to her later-filed request for an accommodation.

required to establish that she is significantly limited in the major life activity of working. Coleman-Adebayo, 326 F. Supp. 2d at 143 & n.7 ("To establish a substantial limitation on the major life activity of working, plaintiff would have to allege and prove . . . '[her] impairment prevents [her] from performing a 'substantial class' or 'broad range' of jobs otherwise available to [her]' rather than demonstrating that she is unable to do her specific job.") (citations omitted). Indeed, plaintiff herself requested that she be "immediately" detailed to another job so that she could "reconnect with the superior level of work I have always performed but cannot do now." Def.'s Mot., Ex. A, at 2-3. Furthermore, the detail plaintiff was ready to begin was located in the same agency – "in Domestic Finance, in the Office of Financial Education." Id. at 3. Thus, there is simply no support for the plaintiff's newly minted argument that she was precluded from working in a broad class of jobs. Rather, the evidence demonstrates that she was only unable to work for one particular supervisor and that she sought to work, within the same agency, at another job "immediately." These facts simply do not support her claim that she is significantly limited in the major life activity of working. See Stroman v. Blue Cross & Blue Shield Ass'n, 966 F. Supp. 9, 11 (D.D.C. 1997) (granting defendant judgment as a matter of law on plaintiff's disability claim where "[p]laintiff was not precluded by her claimed disability from working generally . . . and her alleged inability to perform a *particular* job or work for a *particular* supervisor will not, without more, qualify her as disabled.") (citation omitted), aff'd, 159 F.3d 637 (D.C. Cir. 1998).

## CONCLUSION

For the reasons set forth above, and in defendant's initial motion for partial dismissal/summary judgment, defendant requests that plaintiff's failure to accommodate claim

11

under the Rehabilitation Act be dismissed, or alternatively, that judgment be entered in defendant's favor.[7]

Respectfully submitted,

/s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


/s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

**COUNSEL FOR DEFENDANT**

Of Counsel:

A. Wade Norman
Office of the General Counsel
United States Department of Treasury

---

[7] To the extent plaintiff premises her allegations of reprisal on her request for an accommodation, defendant does not seek dismissal/summary judgment of that portion of plaintiff's Rehabilitation Act claim.

1500 Pennsylvania Avenue, NW
Washington, DC 20220

13